NORTHERN TRUST COMPANY, Appellant, vs. SNYDER,.
Sheriff, imp., Respondent.

*February 21—March 11, 1902.*

*Corporations: Action by stockholder: Taxpayer's actions: Equity: Re-
fusal of officers to sue; Pleadings: Joinder of causes of action:
Misappropriation of public funds: Laches: Counties: County
boards: Special powers: Parol evidence: Construction of stat-
utes: Sheriffs: Duties: Compensation, fees or salary: Presenta-
tion of claims against a county: "Day's time:" Practice.*

1. A member of a corporation, in his own behalf and that of all
other persons similarly interested, may, in an equitable action,
enforce a right of such corporation for its benefit when other-
wise that right would be lost or impaired to its damage.

2. It is essential to an equitable suit of the nature spoken of in the
preceding paragraph, to allege in the complaint facts indicating:
to a reasonable certainty that the corporate officers, upon whom
the primary right and duty to act rests, will not perform that
duty.

3. The necessary showing to satisfy the rule stated in the foregoing
paragraph may be made by allegations to the effect that the
corporate officers have refused or neglected to perform their
duty, or by alleging a state of facts indicating that they are so
concerned in the wrong to be redressed, or, for some other rea-
son, are so hostile to any attempt being made to vindicate the
corporate right, that it is not reasonable to expect that they
will perform their duty.

4. The rule stated in the foregoing paragraph does not apply to an
action for mere preventative relief,—a suit to prevent the cor-
poration or its officers from violating the law under which it
is organized. Every member of a corporation has a right, of
a primary nature, in respect to such matters, and may institute
a suit to vindicate it

5. When a member of a corporation institutes a suit to enforce his own right of a primary nature, matters which might constitute an independent cause of action, falling under the rule first stated, may be joined therewith if so closely *connected* therewith as to form a part of the primary right under the rules governing suits in equity. In that event the right of the corporation may be litigated as an incident to the litigation of the primary right of the plaintiff, and without any previous demand on the corporate officers to perform their duty in the matter.

6. The right of a taxpayer to insist upon a return to the public treasury of money wrongfully taken therefrom ostensibly to compensate for official services, is not affected by laches on his part if the corporation, in respect to its legitimate corporate duties, has not received any consideration for such money, or the recipient thereof was bound in any event to perform the service, taking such compensation therefor as was incident to his office.

7. If a general law be enacted pertaining to county government, giving an option to county boards to severally put the same into effect in their respective counties, but giving no power to repeal their action and restore the former situation, such boards possess the special power of adoption and no other. Having given effect to the law in a county, its board cannot abolish such effect.

8. Parol evidence of the members of a legislative body, as to what they intended in the passage of a law or resolution, is not competent on the question of legislative intent.

9. Sec. 694a, Stats. 1898, authorizes county boards severally to change the method of compensating sheriffs from the fee to the salary system, but not to change back to the fee system.

10. The authority possessed by a county board having limited legislative powers to adopt and rescind resolutions, pertains to the matters within its general local control, not to the exercise of any special power.

11. A county board has no jurisdiction to act upon a claim unless the same is made out and presented pursuant to sec. 677, Stats. 1898.

12. A sheriff cannot perform any duty, as such, outside the state, hence all fees prescribed by law for the compensation of sheriffs relate to duties performed within the state.

13. Counties have no corporate duty to perform in respect to the arrest and prosecution of offenders against the criminal laws of the state. The services of the sheriff in the execution of the

criminal laws of the state are performed for the state, and his compensation is fixed by the state, to be paid by the county.

14. Subd. 27, sec. 731, Stats. 1898, entitles a sheriff to ten cents per mile for travel to serve a criminal warrant only when that travel is successful, and on the particular trip which results in the service. He is not entitled to compensation for unsuccessful trips to serve criminal warrants, whether in the end service is made or not, except under subd. 34 of sec. 731.

15. Where a duty is imposed upon a sheriff by law, and his compensation is fixed thereby, and a similar duty is imposed by another statute, which provides that he shall receive compensation therefor but does not fix the rate thereof, the rule is to regard the compensation where fixed as indicating the legislative measure, and to follow it in the absence of anything to indicate that it was not intended to be such a guide.

16. Since in all instances where a sheriff is required to execute commitments to charitable and penal institutions, it is provided that he shall be compensated for his personal services on the basis of time actually and necessarily employed, and the rate is generally fixed at $5 per day, that should be taken as the legislative measure of compensation for similar services where the rate is not prescribed, in the absence of anything indicating that a larger compensation should be paid.

17. Since the statute allows compensation to a sheriff for expense of assistance in executing a commitment to the state prison only when he has a certificate of necessity therefor under sec. 677, Stats. 1898, a county board has no authority to otherwise make such an allowance.

18. A day's time, in the performance of official duties, includes all the time in which the officer may be so engaged in a single calendar day. A county board has no authority to allow compensation upon any other theory, in the absence of a statute expressly authorizing it.

19. Where the amount to be paid for official services is left to the discretion of an auditing board and it acts beyond its jurisdiction, ordinarily a court having to deal with the matter should declare such action void but leave the board to thereafter exercise a legal discretion; but in an equitable suit, where such an act, being called in question, is declared void, the court may properly determine what compensation is equitable, and settle the whole matter as part of its equity administration therein.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Action by plaintiff in his own behalf as a taxpayer of Douglas county, and in behalf of all other persons similarly situated, to restrain such county from paying certain sheriff's bills for services and expenses, theretofore audited by its county board, upon the ground that the county was not liable therefor, and to obtain an accounting as to moneys paid said sheriff to which he was not entitled, and to recover the same for such county. At the commencement of the trial it was decided that evidence of the details of bills should be omitted till a decision should be reached as to whether any of them, paid or unpaid, were illegal, and that if any were so found, evidence should then be taken to enable the court to properly state an account between the county and the sheriff, charging him with money to which he was not entitled and crediting him with what he was entitled to and with the legal portion of the unpaid bills.

·The findings, omitting formal matters, and all matters not material to the decision of the cause, are in brief as follows: In 1895 Douglas county, by appropriate action of its board, changed the method of compensating its sheriff for services rendered, for which the county was liable, except for keeping and maintaining prisoners in the county jail, from the fee to the salary system. At the time for fixing the salaries of the county officers to be elected in 1898, · the county board resolved that the sheriff to be elected "shall receive no salary or allowance by way of salary or otherwise from Douglas county." No other action than the passage of such resolution was taken to change the system of compensating the sheriff back to the fee system. The defendant was elected sheriff for Douglas county for the term commencing in January, 1899, and he served during the whole of such term. Bills for services and expenses were audited in his favor by the county board to the amount of $52,880.40, about two fifths of which have not been paid. He supposed, when elected and during his term of office, that the action of

the board in 1898 restored the fee system of compensating the sheriff. The paid and unpaid bills include charges of the following nature: $1.50 per case for attending municipal court of Douglas county with prisoners arrested on criminal warrants, the attendance in each case not exceeding one-half day; twenty cents for travel in each of several vagrancy cases, the warrant being served in each case after the accused had been taken into the custody of some police officer, and the travel in each case being about one mile; pursuing criminals outside the state of Wisconsin in numerous cases, in some instances the accused persons being apprehended and brought back to Douglas county for trial, and in some not so brought back; in the latter cases the charges for services being made on the *per diem* basis of $5 per day and expenses for all services outside the state, except in a few instances where the charges were on a mileage basis of ten cents per mile; pursuing criminals outside the state, where the offenders were brought back, the charges being on the basis of *per diem* fees and expenses for services outside the state, and on a mileage basis to and from the state line, each bill being certified by the district attorney, as to the necessity for the pursuit and the reasonableness of the charges; obtaining the attendance of witnesses from without the state; unsuccessful pursuit of witnesses on criminal warrants within the state, the charges being at the rate of $5 per day; unsuccessful trips to arrest persons on criminal warrants within the state, who were subsequently arrested, the charges in such cases being on the mileage basis of ten cents per mile, the bills in all such cases being verified by the district attorney as to the necessity for the pursuit and the reasonableness of the charges; travel at ten cents per mile and expenses in taking persons to the state prison, no compensation for such services having been fixed by the county board in advance; conveying persons to the House of the Good Shepherd at Milwaukee and the Industrial School at

Waukesha, the basis of the charges being ten cents per mile and expenses, and the charges being approved by the county judge; $5 per day for four days per trip in taking persons to the State Hospital for the Insane at Mendota, and taking persons to the House of the Good Shepherd at Milwaukee and the Industrial School aforesaid, the time actually spent being one full day and parts of two days, and the bills being approved by the county judge; pay for assistance in taking persons to the state prison, there being no certificate of a proper or any officer as to the necessity therefor, the offense in each case, however, for which the convict was sentenced, being of a serious nature; expense of telegrams sent and received in effecting the apprehension of offenders; raiding public gambling houses without making arrests; assistance in quelling a riot; time for two officers in taking persons to the workhouse, where only one was employed; services and expenses, assisting the coroner in investigating the cause of death in certain cases, and pursuing and apprehending the person supposed to be criminally guilty of causing the death, no warrant having been obtained or order of the court to make such pursuit and arrest; services in temporarily caring for persons charged with being insane till such time as their causes could be heard and passed upon by the county judge. The salary incident to the office of sheriff for 1899 was $1,500 per year if the salary system was then in force. In that event the sheriff received, during his term of office, for services for which the county was liable, more than the amount to which he was entitled. Some of the sheriff's bills were not itemized as the law requires. The county board intended, by its resolution passed in 1898, to restore the fee system for compensating the sheriff. (The court arrived at that conclusion by the consideration of parol evidence admitted over objection of counsel for plaintiff.) The sheriff's bills were all reasonable and were incurred under the direction of the district attorney. It had been the practice in

Douglas county to run the sheriff's office as respondent
*Snyder* did for a period of some ten years before the com-
mencement of his term of office, as regards pursuing outside
the state persons accused of criminal offenses committed in
Douglas county, and to receive pay therefor, and plaintiff
knew that fact and that Sheriff *Snyder* was following such
practice during his term.

Upon such conclusions of fact the court decided that the
plaintiff had no cause of action, and that the complaint
should be dismissed with costs; and it was dismissed accord-
ingly and judgment rendered against plaintiff.

For the appellant there was a brief by *George P. Knowles*
and *Sanborn, Luse, Powell & de Forest,* and oral argument
by *Mr. L. K. Luse.* To the point that the court erred in
finding the county had returned to the fee system of
compensating the sheriff, were cited, *Fredrick v. Douglas
Co.* 96 Wis. 411; 4 Am. & Eng. Ency. of Law, 375;
*State v. Comm'rs of Lincoln Co.* 18 Neb. 283; *Veeder
v. Lima,* 19 Wis. 280; *Striker v. Kelly,* 7 Hill, 11; *Atkins
v. Kinnan,* 20 Wend. 249; *Comm'rs of Hamilton Co. v.
Mighels,* 7 Ohio St. 115; 7 Am. & Eng. Ency. of Law (2nd
ed.), 1008; *Hanna v. Comm'rs of Putnam Co.* 29 Ind. 170;
*Trester v. Sheboygan,* 87 Wis. 496; *Milwaukee Co. v. Isen-
ring,* 109 Wis. 9; *Hoboken L. & I. Co. v. Hoboken,* 36 N. J.
Law, 540; 17 Am. & Eng. Ency. of Law, 263.

For the respondent there was a brief by *Catlin, Butler &
Lyons,* attorneys, and *Burr W. Jones,* of counsel, and oral
argument by *Mr. Thos. E. Lyons* and *Mr. Jones.* They
contended, *inter alia,* that plaintiff should have requested
the county board to prosecute before bringing suit. 2 Pom-
eroy, Eq. Jur. §§ 1094, 1095; 2 Dill. Mun. Corp. (4th ed.),
§§ 914, 915; *Greaves v. Gouge,* 69 N. Y. 154; *Doud v.
W. P. & S. R. Co.* 65 Wis. 108; *Franey v. Warner,* 96 Wis.
222; *Eschweiler v. Stowell,* 78 Wis. 316; *Land L. & L. Co.
v. McIntyre,* 100 Wis. 256; *Egaard v. Dahlke,* 109 Wis.

371; *Cunningham v. Wechselberg,* 105 Wis. 359; *Craft v. Comm'rs of Jackson Co.* 5 Kan. 518–522. The county board properly settled with the sheriff on the fee basis. 1 Dill. Mun. Corp. § 300; *Hark v. Gladwell,* 49 Wis. 172;. *Duluth, S. S. & A. R. Co. v. Douglas Co.* 103 Wis. 75;. *People ex rel. Bacon v. King Co.* 38 Hun, 373. The county board were authorized to return to the fee system. 15 Am. & Eng. Ency. of Law, 1038; *State ex rel. Coogan v. Barbour,* 53 Conn. 76; *Pond v. Negus,* 3 Mass. 230; *Comm. v. Pittsburg,* 14 Pa. St. 177; *Mead v. Nelson,* 52 Wis. 402. Compensation for services outside the state was properly allowed. Crocker, Sheriffs, § 90; Throop, Pub. Off. § 448;. *Smith v. Birdsall,* 9 Johns. 328; *People ex rel. Hilton v.. Sup'rs,* 12 Wend. 257; *Crofut v. Brandt,* 58 N. Y. 106;. *Gallagher v. Egan,* 2 Sandf. 742; *Benedict v. Warriner,.* 14 How. Pr. 568; *Fernekes v. Milwaukee Co.* 43 Wis. 303; *Sargent v. Comm'rs of La Plata Co.* 21 Colo. 158; *State ex rel. Sup'rs Buffalo Co. v. Allen,* 23 Neb. 451. Expenses; without the state were properly allowed. Mechem, Pub. Off. § 877; Throop, Pub. Off. § 495; *U. S. v. Flanders,.* 112 U. S. 88; *Powell v. Newburgh,* 19 Johns. 284; *Minot v. Roxbury,* 112 Mass. 1; *Barneart v. Patterson,* 48 N. J. Law, 395; *Kollock v. Dodge,* 105 Wis. 187; *Fredrick v. Douglas Co.* 96 Wis. 411. The bills of the sheriff were not defective for failure to properly itemize them, and any such defect was waived. *Parker v. Grant Co.* 1 Wis. 418; ·*Eaton v. Manitowoc Co.* 40 Wis. 672; *Outagamie Co. v. Greenville,* 77 Wis. 171; *Doty v. Sauk Co.* 93 Wis. 102; *Deissner v. Waukesha Co.* 95 Wis. 588; *Grimm v. Jefferson Co.·* 62 Wis. 572; *Ebart v. Langlade Co.* 107 Wis. 569; *People ex rel. Sherman v. St. Lawrence Co.* 30 How. Pr. 173, 180, 181. A county board in the audit, adjustment, allowance, or disallowance of a claim against the county exercises judicial functions, and, having exclusive jurisdiction, its judgment, in the absence of fraud, is conclusive. *La Salle Co.*

*v. Milligan,* 143 Ill. 321; *Outagamie Co. v. Greenville,* 77 Wis. 165; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 262; *Chicot Co. v. Tilgham,* 26 Ark. 461; *Boone Co. v. Dills,* 5 Ky. Law Rep. 135; *McFarland v. McCowan,* 98 Cal. 329; *Snelson v. State ex rel. Comm'rs Madison Co.* 16 Ind. 29; *Comm'rs of Warren Co. v. Gregory,* 42 Ind. 32; *Fitzgerald v. Harms,* 93 Ill. 372; *Cook Co. v. Ryan,* 51 Ill. App. 190; *Carroll v. Board of Police,* 28 Miss. 38; *People ex rel. Baldwin v. Sup'rs Livingston Co.* 26 Barb. 118; *Cox v. Mayor, etc.* 103 N. Y. 519; *Heald v. Polk Co.* 46 Neb. 28; *McCoy v. Able,* 131 Ind. 417; *Wood v. Bangs,* 1 Dak. 172; *Stringham v. Winnebago Co.* 24 Wis. 594; *State ex rel. Comm'rs Buffalo Co. v. Allen,* 23 Neb. 451; *Comm'rs of Garfield Co. v. Leonard,* 3 Colo. App. 576; *Sup'rs Onondaga Co. v. Briggs,* 2 Denio, 26; *Painter v. Polk Co.* 81 Iowa, 242; *Douglas Co. v. Bennett,* 61 Neb. 660. The action was properly dismissed by reason of the laches of plaintiff and for want of equity. High, Inj. § 225; *Frederick v. Douglas Co.* 96 Wis. 411; *Webster v. Douglas Co.* 102 Wis. 181; *Eagle River v. Oneida Co.* 86 Wis. 269; *Tash v. Adams,* 10 Cush. 252; *Painter v. Polk Co.* 81 Iowa, 242; *Ferguson v. Landram,* 5 Bush, 230; *Travis v. Ward,* 2 Wash. 30; *Daniels v. Tearney,* 102 U. S. 415; *Vickery v. Comm'rs Hendricks Co.* 134 Ind. 554; *Sperry v. Kretchner,* 65 Iowa, 525; *Wood v. Bangs,* 1 Dak. 172; *State ex rel. Comm'rs Buffalo Co. v. Allen,* 23 Neb. 451.

MARSHALL, J.  The ground upon which a member of a corporation is permitted to invoke the jurisdiction of equity to enforce a cause of action in favor of the latter is that he has an interest in the corporate affairs needing protection, which cannot be protected otherwise than by an enforcement of the cause of action of the corporation, and that such enforcement cannot be had, and justice will entirely fail, if he is not permitted to stand for those persons having the pri-

mary right to act. In order that the situation in that regard
may be complete to the satisfaction of equity, it is necessary
to show that such persons will not perform their duty. That
may be done in either of two ways: By showing that they
have neglected or refused to proceed after being requested
so to do by some person or persons whose requests in that re-
gard should be honored; or by showing, expressly or by nec-
essary inference, that they are so concerned in the wrong
to be redressed, and hostile to any vindication or attempt to
vindicate the corporate rights, that it is reasonably certain
that a request to them to proceed, to that end by judicial
remedies would be unavailing. Observations may be found
in some legal opinions tending to convey the idea that a de-
mand upon the proper corporate officers to enforce' a corpo-
rate right of action, and their refusal so to do, regardless.
of circumstances, is a condition precedent to the right of a
member of a corporation to stand in their place and do their
duty. Such is not the law. ( If it appears, reasonably, by all
the allegations of the complaint, in a suit instituted by a
member of a corporation in its right, that those persons in
whom the duty and the primary right rests to represent it
will not perform that duty, from any cause, a case is thereby
presented, subject to proof, entitling an interested person,
such as a taxpayer in case of a municipal or political corpo-
ration, to protect his right and that of all others similarly
situated, by suing in his and their behalf, and presenting
to a court for adjudication the cause of action of the corpora-
tion.) *Doud v. W., P. & S. R. Co.* 65 Wis. 108; *Franey v.
Warner,* 96 Wis. 222; *Cunningham v. Wechselberg,* 105
Wis. 359; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245;
*Egaard v. Dahlke,* 109 Wis. 366. The complaint in this
case, and the proofs as well, fully satisfy that test. It is
alleged and proved that the county board of Douglas county,
for a long period of time prior to the commencement of this
action, had been accustomed to audit and order paid, sher-

iff's bills for large amounts, covering almost all branches of his official labor, that were not legally chargeable against the county; that their practice in that regard, and to a considerable extent that of their predecessors in office, had been approved by their legal adviser, and that they believed the same to be legal. Any attempt to recover back money illegally paid, therefore, upon his illegal claims, or to prevent such payment, involved a charge against the members of the board of having wrongfully, either through ignorance or something worse, caused the county revenues to be dissipated. The case made shows that if the sheriff be guilty of obtaining money on illegal bills, the members of the board are guilty participants in the wrong. That they would turn against themselves, impeaching their own transactions, confessing that they had misused their positions and squandered the revenues of the county to the amount of many thousands of dollars, even though they were not guilty of any bad faith in the matter, would have been an exhibition of moral heroism in office not reasonably to be expected. Therefore, there were but two courses for taxpayers to pursue: Submit to the wrong, or invoke the aid of the court in this form of action for redress.

The rule above discussed is not deemed controlling, necessarily, in this case, for the following reason: It applies only when the primary right involved is the right of the corporation, which it might and ought to enforce. It does not concern the action of a member of a corporation to protect his own interests which are of a primary nature. The distinction must not be lost sight of, between where the right of a member of a corporation is primary, such as that to prevent the unlawful expenditure of corporate funds, and where it is secondary, as that to recover for the benefit of the corporation, money unlawfully expended. Every member of the corporate body, in the first situation suggested, is primarily interested in having the corporate officers prevented

from transcending their powers or violating the organic act of the corporate body in any way. Pomeroy, Eq. Jur. § 1093. There is obviously no way of enforcing that right except by a resort to equity, and its doors are always open to any proper case of that kind. The relief sought in such cases is preventative, but any other relief is obtainable which may be necessary, in the given case, to do complete justice in the matter. To that end relief may be given which is appropriate to a state of facts which, of themselves, would be a proper subject for an independent suit by the corporation, or suit in its right by a member thereof, if such facts can be reasonably considered so far germane to the main cause of action as to be deemed a part of it. Pomeroy, Eq. Jur. § 1093. Such is the situation here. The main cause of action was to put an end to a course of allowing illegal sheriff's charges that had been in vogue in Douglas county for a long time, and to enjoin the county from paying a large amount of such charges that had been allowed and were about to be discharged by the issuance of county orders and the payment thereof. That necessarily brought before the court the transactions in regard to the actual disbursement of money upon illegal bills, to the end that any legitimate indebtedness, found due on unpaid bills, might be discharged in whole or in part by money already received by the sheriff, to which he was not entitled, and, incidentally, to restore to the county treasury any excess of money illegally paid to him, over and above the legal part of such unpaid bills. All of the matters brought to the attention of the court were either directly or indirectly involved in the cause of action for preventative relief. That rendered unnecessary any showing of compliance with the rule first discussed as a condition precedent to the maintenance of the suit. *Frederick v. Douglas Co.* 96 Wis. 411, 425.

The claim is made that plaintiff's right of action is barred by laches under the rule applied in the *Frederick Case.*

Three things, at least, are essential to the maintenance of that claim: (1) Knowledge on the part of the plaintiff of the course of dealing with the sheriff, indicating acquiescence therein; (2) performance of the services by the sheriff, for which the alleged illegal charges were made, when he might and within reasonable probability would have omitted to do the work if he had supposed in advance, or had any reasonable ground to suppose, that his right to compensation therefor would be challenged; (3) benefit to the corporation reasonably commensurate with the charges for the services performed.     All those matters were deemed material in the case upon which counsel rely, as will be readily seen by a study thereof.     It is a mistake to suppose that the court there refused to grant restorative relief to the taxpayers merely because of their acquiescence in the payment of the money for a considerable length of time, with knowledge of the facts.     It was grounded largely upon the fact that performance of the service was beneficial to the county in respect to its corporate duties.     There was no question but that the taxpayers had kept silent while the expenses were being incurred and money paid out in discharge thereof, with knowledge of the facts, nor but that the services were rendered in good faith, were worth to the county, in promoting its corporate interests, the amount charged therefor, and that the person rendering them might have desisted from his labor at any time had he supposed that his right to be paid therefor would be challenged by a taxpayer.     The claim of the respondent sheriff will not stand the test of that case at any material point.     All of his claims which were, in any view, legally chargeable to the county, were for services that he was bound to render in the efficient performance of his official duty.     He had no choice in the matter. Whether taxpayers objected to his claims for compensation or not, we must presume that he would have performed his official duties, efficiently, just the same and taken his

chances on obtaining such compensation as was legally inci-
dent to his office.   As to claims for which the county was
not liable in any event, because not rendered in the per-
formance of any duty to the county or to the state, for which
the county was liable, the rule of the *Frederick Case* [96
Wis. 411] does not apply, because the county did not receive
any benefit therefrom, whatever.   Furthermore, so far as
relates to the services covered by the salary of $1,500 per
year, if the sheriff was entitled to that instead of fees for
services rendered in his county, other than boarding pris-
oners at the county jail, there is no finding that plaintiff
knew or had reasonable ground to believe, till most of the
mischief complained of was done, that the law was being vio-
lated by paying fees instead of a salary.   So no ground is
suggested in the *Frederick Case* [96 Wis. 411], nor other-
wise by counsel for respondents, for holding that plaintiff
is estopped by laches from prosecuting this suit.   Granted
that the sheriff acted in good faith from first to last, granted
that he acted under the advice of the district attorney, and
that the county board, in allowing bills which were illegal,
were free from any thought of intending to wrong their cor-
poration, so far as his bills are for the performance of duties
which his office required him to perform, and for which he
was entitled to pay either by salary or otherwise from the
county, he did no more and no less than he would have done
regardless of the attitude of plaintiff or any other taxpayer
as regards his compensation.   So far as his bills are for the
performance of duties which he was not required by law to
perform officially, the county received no benefit.

One of the most important questions for solution is
whether the county board, having once regularly adopted
the salary system, for compensating the sheriff for services
rendered in the county, for which it was liable to him, other
than boarding prisoners in the county jail, possessed power

to return their county to the fee system.  The records of the
county board do not definitely·show that there was any at-
tempt to fully restore such system.  On the trial an attempt
was made, with the approval of the court, to supplement the
records of the board by parol evidence of its members as to
what they intended in regard to the matter.  We need
spend but little time to show that the consideration of such
evidence was manifestly wrong.  It is too elementary to
justify us in referring to authority on the question, that a
legislative body is not permitted under any circumstances
to declare what its intention was on a former occasion so as
to affect past transactions.  When it is permissible for such
a body to construe one of its enactments at all, it is under
such circumstances that its action may reasonably be consid-
ered either as the making of a new law or the change of an
old one.  Its members have no more right to construe one
of its enactments retroactively than has any private indi-
vidual.  *Bingham v. Winona Co.* 8 Minn. 441.  If all the
members acting together cannot do that, certainly individual
members cannot.  But, as before indicated, the rule in that
regard is too elementary to reasonably admit of discussion.
So we must put aside the parol evidence, without which, it is
fair to presume from the trial court's findings, the con-
clusion would not have been reached that the purpose of the
resolution passed by the county board, declaring merely that
the next sheriff should not have a salary, was to rescind
*in tolo* the proceeding had in 1895 adopting the salary sys-
tem.  The resolution, like all resolves, laws, by-laws and
ordinances of a legislative body, must speak for itself, in
the light of those things that may be legitimately resorted
to, to aid in its construction, which by no means includes
parol evidence, of the members of the body concerned in its
adoption, as to what they intended thereby.

There would be much difficulty in coming to the conclu-
sion from the resolution of 1898 itself, that the purpose

thereof was to rescind, more than temporarily, the action of the board in adopting the salary system in 1895, but as it is not necessary to definitely decide that question we will leave it, assuming, for the purposes of this case, that the resolution might possibly have the construction contended for by counsel for respondent, independent of the parol evidence upon which the learned trial court seems to have relied.

It must be conceded that the county board has no general power of legislation. It possesses such powers of legislation in purely local matters as are delegated to it by the supreme legislative power. If we cannot find a delegation of power to it to restore the fee system for compensating its sheriff, after once having changed to the salary system pursuant to what is now sec. 694a, Stats. 1898, then it must be, and is conceded by the learned counsel for respondent, as we understand them, that it does not exist. The general method of compensating sheriffs for services rendered for their counties, or for which such counties are liable, is by fees, but it is provided:

"Any county board may, at an annual or other meeting, by a resolution to be entered on their records, change the method prescribed by law for compensating the sheriff for all services performed by him within the county, for which the county is liable to pay. When such a resolution shall have been adopted it shall be the duty of such board, at their annual meeting preceding the election of county officers, to fix a salary for the sheriff in the same manner as the amount of the salaries payable to other county officers are required to be fixed."

It is very difficult, if not impossible, reasonably, to discover in that language any attempt to confer authority upon the board to change back to the method "prescribed by law," considering that term to refer to the general method which has been in vogue in the state ever since its organization, antedating more than thirty years the law permitting the salary system. The only way it is claimed we can read out

of the law the power we are in search of is to consider such
term as pointing to the particular method of compensating
the sheriff in any particular county, regardless of whether
it is presently under the fee or the salary system. That is,
that as to any county at any time, its method of compensat-
ing its sheriff, whether wholly or partly by the fee system,
is, as to such county, the method "prescribed by law." That
construction is not permissible, as it would render material
parts of the law clearly inconsistent with each other. The
only change which the law authorizes is one which, when
made, is to be followed by action fixing a salary for the
sheriff's office. Manifestly, to fix a salary, after the salary
system shall have been abolished, would be an absurdity.
By a familiar rule, a law is never to be so construed as to
lead to that result, if any reasonable construction can be dis-
covered that will avoid it. The words "prescribed by law"
evidently refer to the system in vogue when sec. 694a was
adopted. That was the fee system. A change from that
system is the only one that needs to be followed by the fix-
ing of a salary. By reading the words, "change the method
prescribed by law," change from the fee system, or abolish
the fee system, the legislative purpose becomes perfectly
plain, if it is not without such reading. Such reading, it
seems, is manifestly according to the legislative intent. In
no other way can the part requiring the fixing of a salary
be harmonized with the preceding part authorizing a change
in the method "prescribed by law."

It is suggested that power to change from the salary to
the fee system may be implied from the power to change
from the fee to the salary system. On that reference is
made to decisions holding that a county board or other legis-
lative body may repeal resolutions as well as adopt them,
and that it may repeal one long after its adoption. *Mead v.
Nelson,* 52 Wis. 402, is a sample of the authorities relied on
by counsel for respondent. The action which the court there

had under discussion was a resolution directing the county clerk to take a tax deed to the county on tax certificates owned by it. Manifestly, whether a county shall or shall not take a tax deed upon its tax certificates is a matter within its general powers of local control. When the court said that a county board may pass a resolution and subsequently rescind it, it was talking about resolutions which concern matters that are under the general control of the board, matters that are within its general powers of local legislation. Not so the manner in which a sheriff shall be compensated. That is fixed by the general law of the state for all counties, with an option applicable thereto, by which they may, severally, substitute the salary system for the fee system, but with no option to substitute the fee system for the salary system. The act enabling counties to abolish the old way of compensating sheriffs, in other words to change from the system "prescribed by law," seems to be like any ordinary option law, giving to municipalities the power, severally, to say when it shall take effect therein. The power to adopt is a special, limited power, which, when once executed, is exhausted. We venture to say that no authority can be produced to support the contention that power to give effect to an option law carries with it, by implication, power to abolish it. In every instance, so far as we can discover, where the lawmaking power, in enacting an option law, has intended to give both the power of adoption and rescission, both powers have been expressly given. Counsel for appellant suggest one such instance in our statutes, and there are others. The people of a town are authorized to change from the school district system to the township system, and to subsequently change back if they so desire. Sec. 552, Stats. 1898. The primary system for supporting the poor was what was known as the township system, and the statutes provide a method by which any county can change to the county system, and also a method whereby it can subsequently

change back to the township system.   Secs. 1517, 1525, Stats. 1898.   In our view, the legislative idea in the law in question was, as contended by counsel for appellant, to make the office of sheriff, to a limited extent, a salaried office, leaving it to the counties, severally, to put the law in force at the pleasure of their county boards, and that the county board of Douglas county, having put it in force in that county, cannot rescind it and change back to the old system, the one "prescribed by law," as the term is used in the later enactment, without an appropriate grant of power from the supreme legislative authority so to do.

Complaint is made that the board acted without jurisdiction in allowing claims in some cases because they were not presented in the form prescribed by sec. 677, Stats. 1898. The statute covering the subject, prior to 1889, provided that, "No account shall be allowed by the county board" unless made out in the particular manner specified.   Sec. 37, ch. 13, R. S. 1858; sec. 677, R. S. 1878.   Then, as indicated in the notes to sec. 677, Stats. 1898, it was held that the law was directory, jurisdiction being referable wholly to what is now subd. 2, sec. 669, wherein it is provided that the board shall have power "to examine and settle all accounts of the receipts and expenses of the county, and to examine, settle and allow all accounts, demands or causes of action against such county; and when so settled may issue county orders therefor as provided by law."   The first decision of the court on the subject is in *Parker v. Grant Co.* 1 Wis. 414.   It was there left undecided as to whether it would be an abuse of power for a county board to allow a claim not made out and presented in conformity to the statutes.   Particular attention was called to the wording of the statute, in that it did not prohibit the board from considering a claim if not made out as specified, and that the requirement that the claim shall be verified was clearly directory, by the very language of the statute.   The court does not seem to

have easily reached that conclusion. It was difficult, manifestly, to avoid giving effect to the mandatory language of the statute, in its very literal sense, prohibiting the board from allowing a claim unless made out in conformity with law. Nevertheless the decision was followed and became as much the law of the state as if read into the statute. It so remained until the statute was changed, and is the law still unless such change renders the decision inapplicable. In 1889, as before indicated, the legislature dealt with the subject anew, and seems *ex industria* to have endeavored to give effect to the statute according to its letter, leaving no reasonable ground for the courts to deal with the matter by judicial construction. The prohibitory clause was taken from the first part of the section and put at the end of that part specifying the manner in which claims shall be made out and presented, and was expanded so as to prohibit the consideration as well as the allowance of any claim until properly made out, and so as to otherwise make it definite and certain, the following words being used:

"And no such claim against any county shall be acted upon or considered by any county board unless such statement shall have been so made and filed."

It seems that there can be no mistaking the legislative purpose in making that radical change in the statute. The clause must now be read as a proviso to the general grant of power contained in subd. 2, sec. 669, to the effect that the county board has power, as therein declared, to adjust and settle claims against the county, such as are specified in secs. 676 and 677, Stats. 1898, when itemized and verified as therein specified, and not otherwise. As the law now stands, if compliance with sec. 677, as to the manner of presenting claims, is not to be considered jurisdictional, for a county board to ignore it would be such a gross abuse of power, such a disregard of the clearly expressed legislative will, as to give any person interested a legitimate ground of com-

plaint. The wisdom of the law is plain. It aims at fencing a county board about so that individual members of the community, who bear the burden of taxation to meet county expenditures, may know with some reasonable degree of definiteness the basis for such expenditures, and whether they are legitimate or not. It is designed to protect the board from importunities to pass upon claims before they are presented in such a way as to be considered intelligently, to enable it to easily eliminate improper charges from claims, and to enable taxpayers to detect abuses in the allowance of claims. The conclusion here reached goes somewhat further than was necessary in *Miller v. Crawford Co.* 106 Wis. 210, but follows naturally from the reasoning of the opinion in that case.

A considerable portion of the disputed charges of the sheriff, both as to paid and unpaid bills, is for services and expenses rendered outside the state in the pursuit, arrest and return to Douglas county of persons accused of crime and triable there, and in obtaining witnesses from outside the state. In some cases the pursuit was successful and in some it was not. It is conceded by counsel for respondent that claims for such services and expenses were not chargeable to the county unless there is authority therefor, express or implied, in the statutes, and that there is no statute expressly authorizing the same. Manifestly, a sheriff cannot perform any official duty outside the state. The statutory regulation of his compensation refers wholly to services which he may render officially. True, if it is a corporate duty of a county to apprehend persons accused of crime and bring them to justice, and there is no way provided by statute for the performance of that duty except by employing some one to render services to that end and by incurring expenses such as those under discussion, the employment of the sheriff to render such services, at a reasonable compensation for time and expenses, would be an appropriate method

·of performing such duty, and power to do so would prob-·ably, under the circumstances, by reasonable if not neces-sary inference, be implied from the existence of the duty itself. Counsel for respondent rely on that to sustain the class of claims under consideration.

The general powers of the county as a corporation are ·vested in its county board, and are definitely enumerated in sec. 669, Stats. 1898. The particular subdivisions of such section to which our attention is called as containing, by im-plication, power to apprehend and bring to justice persons accused of crime, are numbers 5 and 6. The first of such subdivisions empowers the board to levy the taxes prescribed by law and direct the raising of such sums of money as may be necessary to defray all the charges and expenses incident to or arising from the execution of their lawful authority. The second of such subdivisions gives the board general power "to represent the county and to have the care of the county property and the management of the business and concerns of the county in all cases where no other provision shall be made." It seems clear that neither of those sub-·divisions imposes upon the county any duty requiring the incurring of expense other than such as may be incident to business of a civil nature and the collection of the public revenues. They simply clothe the county board with power to represent the county in the performance of its corporate duties elsewhere definitely outlined, and to direct the rais-ing of sufficient money by taxation to pay all expenses inci-·dent thereto and to levy other taxes as an agency of the state. No duty is elsewhere, in the statute, suggested, of the nature here under discussion. It cannot be found in the provisions referred to, unless it be by a construction not warranted, by any language used, or the general system of ·county government, or by the current of authority on the subject. That such public duty does not devolve upon a county or town by mere construction has been too often

decided to be now open to question. The learned counsel for respondent have not been able to cite us to any authority to sustain their view, except a single case, to which we will refer at some length later, and we have not been any more successful in our search to that end. The administration of the criminal law is solely a state affair. Every officer concerned in it, regardless of where the law permits or requires him to resort for his compensation, represents the sovereign power of the state in such matters, and is directly responsible to it for the faithful performance of his duty. A county is not a municipal corporation. It has no police powers. It is not a corporation in the strict sense of the term, but is what is denominated a *quasi* corporation, an organization in the nature of a corporation, exercising special and limited powers. Those powers pertain strictly to local concerns, the performance of local public duties in which no other part of the state is directly concerned. The apprehension and trial of persons accused of crime is a matter not of local, but of general, concern, one in which the people of the whole state, in theory, are equally interested. If a person commits the crime of larceny, he no more commits the offense against the particular political subdivision in which the offense occurs, than against the person whose property he unlawfully takes. It would be as reasonable to say that the offense is against the school district, if committed within the territory of a school district, as against the county, if committed within the territory of a county. The offense is against the state, and it is solely the business of the state to bring the offender to justice; such business to be conducted in such manner as the legislature may see fit to provide. That body has adopted a system of laws as complete as in its wisdom is necessary to that end, and county organizations are no part thereof except in so far as they are required, as mere agencies of the state, to bear

the burdens of taxation, and to pay the expenses of administering the law.

A brief reference to the authorities will be sufficient to demonstrate the correctness of the foregoing. In *Gale v. South Berwick,* 51 Me. 174, the power of a town, under a general legislative grant of power for local government quite similar to that given to county boards in this state, was invoked to justify incurring expense by way of paying a reward for the apprehension of a person accused of having committed the offense of murder within its boundaries. The case turned on whether the apprehension of persons accused of crime was a town duty in any sense unless created by special legislative enactment, and the court said: "The power given by statute to a town to raise money for 'necessary charges' extends only to those which are incident to the discharge of corporate duties. It is no part of the duty of a town to take charge of, or supervise, the criminal proceedings which may be instituted in behalf of the state, unless when such duty is specifically imposed. Towns are under no legal obligation to aid in the detection or conviction of offenders. The enforcement of the criminal law is entrusted to its appropriate officers;" and further, that no power is given to towns to raise money for the detection or conviction of offenders by any statute of that state, and none exists by implication. In *Grant Co. Comm'rs v. Bradford,* 72 Ind. 455, speaking on the same subject, the court said:

"The board of commissioners of a county is a creature of the statute, and is vested with and possessed of just such powers . . . as the statute has conferred upon it, and such as are clearly and necessarily implied, to enable it to carry out and accomplish the objects and purposes of its creation. The law confers no power, and enjoins no duty, upon the board of commissioners of a county to aid in the arrest, prosecution or conviction of a person charged with the commission of crime."

The same court, in *Hight v. Monroe Co.* 68 Ind. 575, held that a county, as such, has no duty whatever to participate in the execution of the criminal laws of the state, and that a contract obligating the county to pay for services in that regard is *ultra vires;* that the general law of the state provides the method by which its laws for the prevention and punishment of crime shall be enforced and of paying the expenses thereof. The power of county boards in the state of Iowa is substantially the same as in this state, and in *Hawk v. Marion Co.* 48 Iowa, 472, in speaking of whether such statutes confer power or duty to aid directly in the administration of the criminal laws of the state, the court decided that no such duty was imposed upon counties, either expressly or by necessary implication; that no duty rests upon counties, as such, to pursue, arrest and bring to justice persons charged with crime; that the only manner of procuring money to pay the expenses of the arrest, trial and conviction of offenders is by taxation, and that the people of one county, as distinguished from the people of another, have no such special interest therein as will authorize the levy of taxes to pay the expenses thereof, except as the duty to impose taxes for that purpose is created by statute. We have a statute (sec. 725a, Stats. 1898) authorizing the sheriff, with the consent of the county board, or, under certain circumstances, of the chairman thereof, to offer a reward for the apprehension or conviction of the perpetrator of a felony. Such power, manifestly, would not exist unless specially granted, and in the section referred to it will be seen with what care such grants of power are made. It is there expressly provided that no such reward or any part thereof shall be paid to the sheriff of the county or his under sheriff, or any of his deputies. It will be seen that the power to offer the reward is not given to the county, but to the sheriff. The general powers of a public corporation, and the nature of a power to incur liability to a person for

apprehending a person accused of a criminal offense, are
discussed at some length in *Patton v. Stephens,* 14 Bush,
324.   The city of Covington ostensibly incurred liability to
pay a reward for the apprehension of a person accused of a
serious criminal offense.   It was held, in effect, that the
crime was not against the city of Covington; that it was
against the sovereign authority of the state and not against
any individual or any local community; that it is no part
of the duty of any local subdivision of a state to bring to
justice offenders against its laws; that the individual officers
of the particular subdivisions of the state, in a way, are its
officers, as well as officers of the municipality, in that the
state requires of them the performance of duties for it; that
the legislature may authorize local subdivisions of the state
to offer rewards for the apprehension of offenders against
its laws, but that such power is not an ordinary corporate
power; that it is not incident to any corporate power or a
matter in which any local body has any interest, taken by
itself, as distinguished from the whole body politic of the
state; that the mere fact that the vigorous pursuit of of-
fenders by the particular local subdivisions of the state in
which their offenses are committed is an incidental benefit
to the local communities, does not give such subdivisions
power to expend public revenues to that end; that no ques-
tion of mere expediency is involved in such matters; that
no power can be implied in favor of a local political cor-
poration which does not pertain to its matters of local con-
trol, and that such matters do not include, in any sense, the
administration of the criminal laws   To the same effect is
*Mountain v. Multnomah Co.* 16 Oreg. 279.

   The authority which industrious and able counsel for re-
spondent have been able to cite to our attention to support
their view is *Yavapai Co. v. O'Neil,* 29 Pac. Rep. 430, de-
cided in the supreme court of the territory of Arizona.   The
reasoning upon which such decision is based leaves it with-

out any considerable persuasive power. The foundation principle thereof is that bringing offenders to justice is one of the corporate functions of a county in that it is one of its corporate duties to aid the local courts in the administration of justice by providing a courthouse and paying the expenses of officers and court proceedings, etc. The reasoning is clearly unsound, as has been seen by reference to numerous authorities. The law imposes on counties the duty to pay salaries of officers concerned in the administration of the criminal law, but that does not carry with it any other duty. That, as has been indicated, is merely the means resorted to by the state for compensating its agents in the prosecution of criminal offenses. That is true in respect to all the agencies of the state that have to do with the administration of its criminal laws. The duty of the county to pay such expenses is substantive in character and is imposed upon the county by express statute for a single purpose only. No other power is to be implied therefrom. The duty of performing the services, to be paid for by the county, is imposed by the state directly upon its own agents, the particular officers designated by law. As intimated in *Mountain v. Multnomah Co., supra,* a county board has no more right to contract or incur expense for the arrest of offenders against the criminal laws of the state, than a town or school district. We should say, in passing, with reference to the Arizona case, that it was decided by a divided court, two of the four judges who took part therein dissenting on a question other than the one here considered, holding the law on such other question to be contrary to the holdings of this and all other courts but one, so far as we know, and to all elementary authority, and one of them dissenting from the decision on the particular question here involved. Neither in the opinion of the court nor the statements filed by the dissenting judges is any authority referred to on the main or any other question, clearly indicating that the decision was

not the result of thorough or extensive study. It is reasonable to presume it represents merely the individual notions of the judges, entirely independent of the wealth of authority upon the subjects involved, which was not understood to exist. They were guided in their decision by what they thought was most expedient, most promotive of the public welfare, not attempting to justify it by reference to any express power found in the statutes. It was thought, as shown by the opinion, that the great importance to individual communities of bringing criminals to justice and the inefficiency of a system that does not authorize them to compensate their local officers for pursuing offenders when they escape the boundaries of the state, justified a conclusion that power to do so was intended to be conferred by statute. The same reasoning is pressed upon our attention, but it is not persuasive in the face of the well-settled law as to the character of county government. It might be a very wise provision of law to lodge power in local communities, under such restraints as would be liable to secure discreet and efficient execution thereof, to pursue criminals that escape from the state, at local expense. Suffice it to say, however, that has not been done here up to this time, nor elsewhere, so far as we know, as regards a county board. That the general practice in Douglas county has been such that respondent sheriff believed and had some ground to believe that he could make excursions at will, or with the approval of the district attorney, beyond the confines of the state, in pursuit of offenders at the expense of his county, is exceedingly unfortunate; but there is no power in the court to save him harmless from his mistake. He has neither a legal nor an equitable claim for compensation for services or expenses rendered or incurred on such excursions, whether he succeeded in his missions or not. No doubt as soon as an accused person was brought by him within the boundaries of the state, it was competent for the

sheriff to arrest him on his warrant and to charge the legal fee for service of the warrant and for travel to and from the point of arrest, so far as the services performed were outside of Douglas county. *In re Tisdale,* 1 Dec. Comp. Treas. 127, and cases cited.

The next most important subject presented for consideration is, Was the sheriff legally entitled to compensation on the mileage basis of ten cents per mile for travel on unsuccessful trips within the state to arrest persons for the apprehension of whom he held warrants, whether he made a successful trip for that purpose ultimately or not? The statute under which charges are allowed on the mileage basis (subd. 27, sec. 731, Stats. 1898) has received construction to the effect that it applies only when the travel to serve results in the arrest of the alleged offender, and it has been held that no compensation can be allowed in the absence of such arrest except in the discretion of the county board and on the basis of a reasonable allowance for the time necessarily employed and expenses incurred under subd. 34 of such section. *Schneider v. Waukesha Co.* 103 Wis. 266. As said in that case, and supported by authority, previous to the amendment of subd. 34, embodied in the revision of 1898, no compensation was allowed to a sheriff for unsuccessful pursuit of offenders unless the escape was from custody without negligence on the part of the officer. Did the legislature, in providing for compensation for unsuccessful pursuit in attempts to arrest offenders in the first instance, intend to include such pursuit regardless of there being any subsequent successful pursuit,—that travel to serve a criminal warrant should be limited to travel on a successful trip to serve a criminal warrant? The solution of that question must rest on the statute, in the light of the reason for the construction given to the language "travel to serve" in subd. 27. In *Ex parte Wyles,* 1 Denio, 658, it was said that the rule is without exception that a statute allowing to an officer

"compensation for travel to serve" a criminal warrant is restricted to cases where the travel is successful; that it does not cover travel in various directions where no arrest is made; that the term would support another and equally plausible construction, but that the one indicated is well established and is in accordance with sound policy in that it excites vigilance and fidelity, whereas the opposite rule would offer a strong temptation to remissness and fraud. In *Labette Co. Comm'rs v. Franklin,* 16 Kan. 450, Justice BREWER delivering the opinion, it was held that "travel to serve". means travel when it results in a service, and that courts cannot extend the settled meaning of those words so as to give compensation to a sheriff upon the theory that the statute will admit of that construction; that travel to serve excludes travel when the purpose of the sheriff is not successful, and that such construction has been adopted by the great weight of authority. So it is not open to question now, as we have seen, but that the legislature intended, by the language of subd. 27, sec. 731, Stats. 1898, to convey that meaning said to best stimulate official fidelity. to duty. By the same reasoning, "travel to serve" means travel on the trip to serve which is successful, leaving compensation for unsuccessful trips to serve criminal warrants to be compensated for under subd. 34, in the discretion of the county board. Any other construction would, undoubtedly, open wide the door to the very mischiefs suggested in *Ex parte Wyles, supra,*—those mischiefs which the courts have assumed the legislature intended to guard against in allowing mileage fees for travel to serve a criminal warrant only where that travel is successful. If an officer may charge ten cents per mile on numerous trips in .many directions to apprehend an offender, which are unsuccessful, if in the end he makes a successful trip and secures him, it is easy to see how he may use a warrant as the basis for a very large bill

against his county, by finally making a successful trip of a few miles, to serve a warrant, and there be no efficient way for the county to defend against it or for any one to discover the wrong. If fees are allowable only on the mileage basis when there is a successful trip to serve a criminal warrant and pay for unsuccessful trips is allowable only on the basis of a reasonable compensation for time spent and necessary expenses, the claim for services and expenses to be itemized and presented to the county board for consideration as provided for by law, with the certificate of the district attorney as to the necessity and propriety of the unsuccessful trips, and the claim supported by proof to the satisfaction of the board that the escape from pursuit on the unsuccessful trips was not the result of carelessness or negligence of the sheriff, the danger of the public funds being uselessly and fraudulently expended in such matters will be reduced to a minimum. In our judgment the statute must be so construed. The unsuccessful trips to arrest offenders, made by the respondent sheriff, whether there was subsequently a successful trip to that end or not, should have been compensated for, if at all, under subd. 34, sec. 731, Stats. 1898.

The statutes clearly indicate a legislative purpose that for taking persons to the charitable or penal institutions of the state a sheriff shall be compensated for his personal services on the basis of time actually and necessarily occupied by him in the performance of such service, and that the rate of compensation shall be $5 per day and expenses. The time basis is mandatory in all cases. Where the rate is not specified, the legislative judgment is indicated by reference to numerous other cases where the rate for similar services is specified. It is a safe rule to follow, one which is generally applied by courts, that where a fee is prescribed for a particular service, and a duty is imposed to perform another service of a similar character, for which compensation is

allowed but for which no rate is expressly fixed, the fee specified for such particular service should be regarded as indicating the legislative measure to be followed in all similar matters, in the absence of some special circumstance indicating that it was not intended to be such guide. The sheriff is allowed for service in executing a commitment to any industrial school, $5 per day and his actual and necessary expenses, and no more, under sec. 4970, Stats. 1898. The same compensation is allowed for executing a commitment to the State Public School at Sparta. Sec. 573e, Stats. 1898. The same is true as to the compensation for the sheriff's personal services in executing a warrant of commitment to a hospital for the insane under sec. 602. The compensation allowed for a sheriff's services in executing a commitment to the state prison is "a fair compensation for his time necessarily spent in transporting the prisoner, to be fixed and allowed by the proper auditing officer or auditing board of the proper county," and, "the amount actually and necessarily expended by him in transporting such prisoner, including the amount paid for boarding and lodging and such guards as may have been necessarily employed by him." We should say in passing that this statute evidently contemplates that the compensation of the sheriff for his personal services shall be fixed in advance of the rendition thereof, but in the absence of such fixing, there can be no doubt but that the sheriff would have a legitimate claim, and that it would be perfectly competent for the board to adjust and pay it. The sheriff in this case took note of the legislative idea that charges for *per diem* fees should be at the rate of $5 per day in making most of his claims, including his claims for unsuccessful pursuit of offenders, and the county board also seems to have recognized, in most cases, the legislative guide. But in the bills for executing commitments to the state prison, and numerous bills for executing commitments to the industrial school and other institutions, the

statute was wholly ignored, both by the county board and the sheriff. That was manifestly wrong, upon the part of the sheriff, and was abuse of power on the part of the board. The learned circuit court, in approving the bills and finding that they were all reasonable, evidently overlooked the clear legislative purpose that time spent in performing service should be the basis of compensation, and that the rate should be $5 per day, subject to variance in executing commitments to the state prison upon a showing indicating that performance of that service was more than ordinarily burdensome. Where it rests in the discretion of the county board to determine what is a reasonable compensation, the court should not revise their action in the absence of clear evidence of such manifest abuse of power and disregard of the statute as to show that the board failed to exercise a legal discretion, and not otherwise than as incidental to relief upon some other question, in order to do equity. That is the situation here. Compensation was allowed on a basis of miles traveled where the statute expressly requires it to be on a *per diem* basis. A ten cent per mile rate was allowed where the statute permits only the *per diem* fee of $5 per day, and allows, by implication, such variations from that rate, in cases of executing commitments to the state prison, as the nature thereof in respect to there being more than ordinary difficulty, may justly require. We must assume that the trial court, in finding that, though the bills were allowed on a wrong basis, they were not inequitable as to amount, failed entirely to give attention to the legislative will as to the measure of compensation, and that it should be allowed on a *per diem* basis. The court must do what the county board failed to do in order to work out the equities between the parties.

What has been said seems to cover all the matters presented for consideration by the exceptions to the findings and the assignments of error that need more than a brief

mention. The action of the board in allowing bills at the rate of $5 per day for four days' time in executing each of several commitments to the hospital for the insane, when only one day and parts of two others were actually occupied in performing the service (finding 30), and in allowing for expense of assistance in executing commitments to the state prison without the official certificate of necessity therefor required by sec. 677, Stats. 1898, and contrary to the express provision thereof (finding 31), and in allowing for expenses of telegrams sent and received in relation to the apprehension of persons charged with crime (finding 32), were such manifest abuses of power that no discussion thereof seems necessary. A day means a calendar day in all cases where the statute merely provides for compensation at a certain or a reasonable sum per day. Neither a county board that has to do with executing the law, nor courts that have to do with enforcing the execution thereof, have any right to call the work done in a calendar day any more than a day's work or service, in the absence of some statute expressly authorizing it. *Vogt v. Milwaukee,* 99 Wis. 258; *U. S. v. Garlinger,* 169 U. S. 316. That does not militate against the right of a municipality to consider any fractional part of a day, which is greater than the time ordinarily devoted to labor in one-half of a day, a day; but one calendar day cannot be legitimately called two days for the purpose of basing *per diem* pay thereon, unless the legislature so provides. It is not improbable that an officer may need assistance in executing a warrant or commitment to the state prison and not know it in time to obtain the certificate required before the rendition of the service. But that is not essential. If he obtains the certificate afterwards and presents it as proof of the validity of his claim for compensation for the assistant, that satisfies the statute. However, in the face of the law commanding that no such claim shall be allowed unless the magistrate making the commitment certifies to the necessity

for assistance, to do otherwise is worse than a mere abuse of power. It is a usurpation of power, and for the court to sanction it merely because the assistance was in fact necessary, would be a judicial nullification of the legislative will in a field where it is supreme.

There are numerous matters covered by the findings and exceptions that are disposed of by the decision that the sheriff was entitled only to a salary for services of himself and deputies in his county, aside from boarding prisoners in the county jail. Otherwise, some of such matters would require serious attention. The following are disposed of with the salary question: Attending municipal court with prisoners (finding 9); serving warrants and travel in vagrancy cases (finding 11); raiding gambling houses (finding 33); expenses of quelling riot (finding 34); conveying prisoners to the workhouse in Douglas county (finding 36); assisting the coroner in investigating the cause of death and pursuing without warrant or order of court and arresting the person supposed to be criminally liable therefor (finding 38); caring for persons charged with being insane till their cases could be heard by the county judge (finding 40); all claims for pursuit in Douglas county of persons accused of crime, whether such pursuit was or was not successful. The result of what has been said independent of the salary question renders these further claims illegal: Expenses and services in the pursuit of criminals outside the state, whether successful or not, and whether with or without a requisition (findings 12, 13, 14, 19, 35, 37); services and expenses for executing commitments to penal and charitable institutions in excess of the amount allowable on the basis indicated in this opinion (findings 28, 29); services in arresting criminals within the state, whether after being brought therein from without the state or not, where, previous to the successful trip, unsuccessful trips were made, in excess of charges on the mileage basis for necessary travel in the state on the

successful trip and the legal fee for the arrest, and a reasonable compensation for time employed in pursuit of the offender within the state on the unsuccessful trips, and expenses, the necessity or propriety of the pursuit being certified by the district attorney, and satisfactory proof being furnished that the escape from pursuit on the unsuccessful trips was not attributable to carelessness or negligence of the sheriff (findings 17, 32, 37). On this branch of the case we should say in passing that the statute (subd. 34, sec. 731, Stats. 1898) clearly contemplates that the certificate of the district attorney shall be sufficient to establish necessity or propriety of the pursuit, but not the amount of time employed nor the expense incurred, and clearly not the fact of whether the escape from pursuit was owing to the carelessness or negligence of the officer. We apprehend from the finding that the trial court overlooked that.

The foregoing indicates pretty clearly a long course of official infidelity, of utter disregard for statutory restraints where statutory direction and power should have been searched for at every step, amply justifying this appeal to judicial power by taxpayers. The learned trial court seems to have given controlling weight to the fact, established to its satisfaction, that the sheriff, the members of the county board, and their legal advisor, the district attorney, acted throughout in the utmost good faith, and that the sheriff relied upon the district attorney and acted under his direction and approval. The attitude of the officers in that respect is worthy of consideration to the extent of saving them from the condemnation which willful misconduct would merit, but has little bearing upon the validity of the sheriff's claims, paid or unpaid, which the county was neither liable for nor received any benefits from, as regards its corporate duties. Such attitude cannot make conduct which is absolutely wrong right, so as to enable the respondent sheriff to keep or receive money to which he has no legal or equi-

table claim. Much depends upon the fidelity, intelligence, and ability of a district attorney; and those who have a legal right to look to him for official guidance ought, from a moral standpoint, at least, to be considered justified by his action, where it is not outside his power or is so manifestly wrong that a layman ought not reasonably to be misled thereby. But a district attorney cannot confer power on a sheriff to render service at public expense except in the precise manner indicated by statute. All officials ought to understand that. He may place a warrant or other paper in the sheriff's hands and direct him to serve it, but the law of the land, not the direction of the district attorney, is to be followed in executing it. The sheriff, not the district attorney, is the chief peace officer in the county. His sphere of action is much broader than that of the district attorney. His duties are many and important. In many respects he is the most important officer in his county, and some of his most onerous duties have no financial incidents direct to himself. The peace of the county is largely under his guardianship. His duties are well defined, regardless of the district attorney. Such attorney cannot enlarge those duties. He has no more right to direct the sheriff to go beyond the jurisdiction of the state or to do anything not required of that officer by law than any private citizen. The tendency in this case to shield official delinquency by the robe of charity and ignorance, supported by that of the district attorney, went too far in the decision appealed from. A state of ignorance, we are told, is a state of bliss, but it is not one of security in a legal sense, for all are presumed to know the law, and that needs to be applied with considerable rigor as to persons who deal with the public revenues. It is just such abuses as we have here considered that create the great burden of taxation more than do the legitimate expenses of government. County boards, and other boards, councils, and all in official station, should learn the lesson that public revenues

are not for private use, for dissipation under the forms of law in payment of illegal claims by or to the persons whom the people trust to guard and devote the same to the proper public use; that there is a power potent, if invoked season-ably, to compel restitution to the public treasury of money illegally, though by forms of law, withdrawn therefrom; that a person is not much safer in respect to his ability to permanently enjoy money wrongfully abstracted from the public funds than the person who wrongfully applies pri-vate property to his own use; that ill-gotten gain, the same in the one case as in the other, is liable to burn and destroy the hand that takes it. A strong public policy to that end, firmly enforced by the courts whenever judicial remedies are properly invoked, will be more promotive of fidelity in official life than mere public opinion. Experience shows that unfaithful officers can retain office to the detriment of the public good. The policy that prevents them from enjoy-ing illegitimate fruits of official service is one of the most efficient agencies to prevent official infidelity. Such infi-delity as we have here considered springs as much from in-excusable inattention to legal requirements, without any real moral turpitude, as from willful disregard of duty. The effect upon the taxpaying public, however, is the same in the one case as in the other. So the conclusion here reached does not require a reversal of the decision of the lower court as to there being no intentional wrong in the conduct of the officers whose administration is condemned.

As before indicated, there are some subjects covered by the sheriff's claims that the law contemplates should be left to the discretion of the county board. Its action in regard thereto is not binding upon the county, however, where it fails to exercise a legal discretion. As an original proposi-tion, the court should not substitute its discretion for that of the board when it has acted without jurisdiction, either by acting where it has no right to act at all, or acting beyond

its jurisdiction. Treating such a matter in the abstract, the board ought to be required to consider the subject and exercise its discretion as the statute contemplates. But in a case like this, where equity has jurisdiction of all the parties and the primary subject of the suit, it may properly, in order to do equity to one party, compel the doing of equity by the other, disposing fully of all the questions directly involved in the litigation. To that end there must be in this case a full accounting between the sheriff and the county in the light of the rights of each as here decided, it being understood, pursuant to the statutes on the subject, that the salary of the sheriff, having once been fixed at $1,500 per year and not thereafter changed at the time the county board had an opportunity to change it, it remained at $1,500 and was the salary incident to the office during respondent's term. If upon such accounting it shall be found that the money received by the sheriff from the county exceeds the amount thereof to which he is legally entitled and the amount of his unpaid claims which are legal, and the costs of this litigation, judgment should be rendered against him for the excess. If the balance be found the other way, judgment should be rendered in his favor against the county. Judgment for the plaintiff's costs and disbursements should be rendered against the defendant sheriff and the county. The final decree should be so framed that if such judgment for costs be not paid out of money going to the sheriff, as indicated, and be collected of the county, it shall have a judgment claim to that extent against him in addition to any other such claim.

*By the Court.*—The judgment is reversed and the cause remanded to the circuit court for Douglas county for further proceedings in accordance with this opinion.