HAYES and others, Respondents, vs. HOFFMAN, imp., Appellant.

*November 9, 1926—February 8, 1927.*

*Zoning laws: Construction: Setback on corner lots: Constitutionality of ordinance: Waiver of objection by going to trial: Laches.*

1. Sec. 26.63 of the zoning ordinance of the city of Milwaukee is construed, as applied to a C. residence district, so as to require a setback in the case of a corner lot to fifteen feet on each street.   p. 69.
2. A defendant who, in an action to enjoin the construction of an apartment building, by his answer raised no issue relative to the constitutionality of a city zoning ordinance affecting the property, but took part in the proceeding fixing his liability under the ordinance, waived his right to raise any question as to its constitutionality for the first time on appeal.   p. 70.
3. The fact that police regulations in some instances operate with hardship and seem oppressive does not render such a regulation invalid or unconstitutional, since in contemplation of law the benefits equal the burdens.   p. 70.
4. Plaintiffs, who were the owners of property located near that of the defendant, and who had objected to the erection of the apartment building, are *held* not guilty of laches in proceeding to enjoin the construction where defendant knew at all times that he was acting in violation of the ordinance.   p. 71.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

An action brought to enjoin construction of an apartment building. On January 15, 1925, the defendant *William Hoffman* purchased the premises located on the northwest corner of the intersection of Cedar and Thirty-first streets in the city of Milwaukee. The lot had a frontage on Cedar street, which runs east and west, of seventy feet, and a frontage on Thirty-first street, which runs north and south, of 150 feet. Thirty-third street is a block west of Thirty-first street. Thirty-second street does not extend through the block of which defendant *Hoffman's* lot is a part. The next street north of Cedar street is State street. At the time of

the purchase there was located on the premises a single-family residence which had a setback from Cedar street of at least fifteen feet.   Having procured a permit therefor, the defendant *Hoffman* moved the residence to the north end of the lot and procured a building permit to construct an apartment building upon the lot.   The situation is best understood by a reference to Exhibit 2 A, reproduced herewith.

The apartment building is a two-story building with an English basement, and when completed will contain eleven apartments. It fronts on Cedar street, has no door or entrance on Thirty-first street, but has an entrance at the rear or north end. The moving of the house was completed in the month of April, and in June, 1925, the defendant *Hoffman* commenced excavation for the apartment building. He started the mason work for the first story on August 13, 1925. The work on the apartment building had progressed one story in height when he was notified that he was not complying with the building ordinance and that the plaintiffs or some of them objected to the erection of the building for that reason.

This action was begun on February 23, 1926, to procure a cancellation of the building permit theretofore issued and to require the defendant *Hoffman* to remodel the apartment building so as to make it comply with the zoning ordinances of the city of Milwaukee applicable to the block in question, and for other relief.

Upon the trial the court found that the proposed building of the defendant violated the provisions of the zoning ordinance of the city of Milwaukee in the following particulars:

"(A) The apartment building has a setback from the street line of Thirty-first street of 2.40 feet, whereas the setback as required by the ordinance applicable to the apartment building requires a minimum setback of 15 feet from Thirty-first street.

"(B) The west side yard of said apartment building is only 5.46 feet wide, whereas the ordinance requires that said side yard be 8 feet in width.

"(C) The side yard to the north of the frame house is 3.47 feet in width, whereas said ordinance requires that said side yard shall be at least 5 feet in width.

"(D) The rear yard of the apartment house, without allowing a south side yard to the defendant's frame house, is 14.62 feet, whereas the ordinance requires that said rear yard shall not be less than 20 feet. The rear yard of the de-

fendant's frame house is only 3 feet, whereas the city ordinance requires a rear yard of at least 20 feet.

"(E) The frame house moved to the rear of the defendant's premises exceeds the permissible building area that can be occupied by buildings other than accessory buildings on said lot, in that the area of the lot occupied by the house is 2,849.7 square feet, and fifty per cent., the maximum permissible area thereof which can be occupied by the house, is 1,424.85 square feet, and the frame house occupies 1,481.74 square feet, which is 56.89 square feet in excess of said maximum permissible area.

"(F) The apartment house exceeds the permissible area that can be occupied by buildings other than accessory buildings on the lot so occupied by it after crediting to said apartment building all of the space between said apartment building and the frame house on the rear of defendant's premises, in that the area of said lot as occupied by said apartment building upon which a maximum of sixty per cent. is permissible is 5,464.5 square feet, and the area upon which a maximum of fifty per cent. is permissible is 2,185.8 square feet, making the total maximum permissible building area 4,371.6 feet, and that said apartment building as it is now being erected occupies 4,791.37 square feet, which is 429.77 square feet in excess of said maximum permissible area."

That if the building be completed in accordance with the plan of the defendant, the defendant would not be entitled to receive a certificate of occupancy, and without such permit the defendant *Hoffman* could not lawfully use or occupy the premises.

That "the defendant, prior to the commencement of any work on said apartment building and at all times since, well knew that the erection of said building and the moving of said frame house in the manner in which he caused the same to be erected and moved as hereinbefore set forth constituted wilful violations of said zoning ordinance, and that said defendant well knew at the time the work on said apartment building had progressed no farther than the building of the east basement wall, which was on or about October 26, 1925, that the plaintiffs objected to his violation of said zoning ordinance by the erection of said building in such manner. The erection of said building in violation of said zoning or-

dinance as hereinbefore stated has caused the plaintiffs, *William A. Hayes, James Oastler, William R. McGovern,* and *Thomas A. McCormick,* special and material damage, and that the completion thereof in that manner will enhance such damage and cause irreparable damage to said plaintiffs."

As conclusions of law, that the said plaintiffs have no adequate remedy at law, that they were not guilty of laches, and that they were entitled to a judgment requiring and permanently restraining the defendant *Hoffman* from proceeding with the erection and construction of said building, and decreeing that the defendant *Hoffman* should with all due and convenient speed alter the said buildings upon his said premises so that the same should conform to the requirements of the zoning ordinance with respect to setback from Thirty-first street, area, side yards and rear yards, such work to be completed within six months from the date of service of notice of entry of judgment herein, with provision for an application for an extension of time if it should prove impossible for the defendant to complete the alterations within the time stated.

From the judgment entered accordingly, the defendant *Hoffman* appeals.

For the appellant there was a brief by *W. C. Seefeld,* attorney, and a supplementary brief by *George E. Ballhorn* and *George H. Katz,* of counsel, all of Milwaukee, and oral argument by *Mr. Katz* and *Mr. Ballhorn.*

For the respondents there was a brief by *J. F. Krizek,* attorney, and *Miller, Mack & Fairchild,* of counsel, and oral argument by *Mr. Paul R. Newcomb* and *Mr. Krizek,* all of Milwaukee.

The following opinion was filed December 7, 1926:

ROSENBERRY, J. Upon the appeal the defendant *Hoffman* assigns errors, which assignments present the following issues:

(1) "Did the defendant *William Hoffman* violate the zoning ordinance of the city of Milwaukee with respect to

setback on Thirty-first street, area, side yards and rear yards in the erection of the apartment building and the moving of the frame house in the manner in which he caused the apartment building to be erected and the frame house moved to the rear of said lot?

(2) "Is not the zoning ordinance void as to the setbacks required because of it being unreasonable and oppressive?

(3) "Are the plaintiffs not guilty of laches?"

The contention upon the first proposition is based mainly upon the provisions of sec. 26.63 of the zoning ordinance relating to setbacks:

*"Setbacks:* On lots fronting on one side of a street between two intersecting streets, no building shall hereafter be erected, and no existing building shall be reconstructed or altered in such a way that any portion thereof shall be closer to the street line than any existing building fronting on that street within that block; but in no case shall the required setback in a 'C' residence district, and in any adjacent 'D' residence district, be greater than fifteen feet."

In the case of a corner lot the inspector of buildings has construed the ordinance to mean that a setback is required on one street only.   The ordinance defines a corner lot as follows:

"A corner lot is a lot or portion of a lot not more than fifty feet wide at the junction of and fronting on two intersecting streets.   Any portion of a lot more than fifty feet distant from that street with the greater frontage shall comply with all the provisions of this chapter respecting interior lots."

An interior lot is defined as follows: "An interior lot is a lot other than a corner lot."

By the zoning ordinance the city of Milwaukee is divided into four districts, known as residence districts, local business districts, commercial and light manufacturing districts, and industrial districts, and the city is further divided into four classes of area districts, to wit: A, B, C, and D. The property owned by the plaintiffs as well as that of the

defendant is situated in a residence district and in area district C.

The trial court held that the ordinance as applied to a C residence district should be so construed as to require a setback in the case of a corner lot to fifteen feet on each street. If the definition of a corner lot be adhered to, it seems to be impossible to reach any other conclusion. By the definition a corner lot is one fronting on two streets. The defendant's lot therefore fronts on Cedar street and on Thirty-first street. It is conceded that under the terms of the ordinance the setback on Thirty-first street is fifteen feet; the apartment house as constructed has a setback of 2.40 feet and is therefore clearly in violation of the terms of the ordinance. It is equally true that it was erected in violation of the area provisions of the ordinance applicable to the C residence district, and the trial court rightly so held.

The second proposition presented is that the zoning ordinance is void as to its setback provisions because it is unreasonable and oppressive. The complaint in this action set out in great detail the ownership of the property, the applicable provisions of the zoning ordinance, the respects in which it was claimed the ordinance was violated, the damage alleged to have been sustained by the plaintiffs, and all material facts in relation to the matter. The answer of the building commissioner was a general denial. The answer of the defendant *Hoffman* was, after admission as to the parties, ownerships, etc.:

"Denies that defendant has violated and is violating any of the provisions of section 26.63 of said city ordinance and that defendant William D. Harper, as building inspector of the city of Milwaukee, issued a permit to the answering defendant in violation of said zoning and building ordinances of the city of Milwaukee and without authority."

The answer of the defendant in this case raised no other issue, and the defendant chose to rest his case upon the

proposition that he was not erecting his building in violation of the terms of the ordinance. The answer made no claim that the ordinance was void because unreasonable and oppressive or in violation of any of the constitutional guaranties. It is sought to present that question for the first time in this court. The question is raised in the brief of Mr. Seefeld, who tried the case in the court below, and is argued at considerable length and with vigor by Mr. Ballhorn and Mr. Katz, who appear as of counsel here.

The constitutionality of the ordinance as a whole was considered in the case of *State ex rel. Carter v. Harper,* 182 Wis. 148, 163, 196 N. W. 451, and its constitutionality sustained. It was there said:

"It is our conclusion that the ordinance is, in the respects here considered, a reasonable, valid, and constitutional enactment. It is appreciated that there are other provisions of the ordinance the validity of which may be the subject of future challenge. It is to be understood that no opinion is expressed with reference to any features of the ordinance except such as are herein treated."

It is the duty of a person who claims that an ordinance invades rights guaranteed by the constitution to raise that question at his earliest opportunity. Taking part in a proceeding which fixes his liability under the ordinance without raising any question as to constitutionality of the ordinance is a waiver of the right to raise that question subsequently. *Shoal Creek Coal Co. v. Industrial Comm.* 300 Ill. 551, 133 N. E. 218; *Chicago-Sandoval Coal Co. v. Industrial Comm.* 301 Ill. 389, 134 N. E. 158. See, also, 6 Ruling Case Law, 94, and cases cited.

This salutary rule is peculiarly appropriate in this case. No situation map was filed with the application, at least none such as is required by the terms of the ordinance. No evidence was offered as to the general situation in the city of Milwaukee. There are in almost all police regulations instances where the law operates with hardship and seems op-

pressive. That such is the fact, however, does not render the regulation invalid or unconstitutional. In contemplation of law, the benefits equal the burdens. The plaintiffs were given no opportunity to meet the issue in the court below. The record was made up without reference to the claim made here for the first time. We cannot entertain it.

The plaintiffs were not guilty of laches. The court finds that the defendant *Hoffman* knew at all times that he was proceeding in violation of the provisions of the law. The facts do not present a case where a party has proceeded in good faith and been misled by the conduct of the plaintiffs in failing seasonably to assert their rights.

*By the Court.*—Judgment affirmed.

A motion to amend the mandate was denied, without costs, on February 8, 1927.