244

MILWAUKEE MALLEABLE & GREY IRON WORKS and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 4, 1935—February 4, 1936.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson D. Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Czerwinski there was a brief by *Edward J. Herte* of Milwaukee.

The following opinion was filed December 3, 1935:

ROSENBERRY, C. J. It is conceded by both sides as the law stood prior to the amendment of 1933, claimant was not entitled to an award for the reason stated in *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772, and *North End Foundry Co. v. Industrial Comm.* 217 Wis. 363, 258 N. W. 439.

Sec. 102.01 (2), Stats., was amended by the legislature in 1933 (chs. 314 and 402) to read as follows:

" 'Act' as used in this chapter means 'chapter;' 'compensation' means workmen's compensation; 'injury' is mental or physical harm to an employee caused by accident or disease; . . . 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury or in the case of disease, the last day of work for the last employer whose employment caused disability."

The last sentence prior to its amendment in 1933 read:

" 'Time of injury,' 'occurrence of injury;' 'date of injury' is the date of the accident which caused the injury or the date when the disability from the occupational disease first occurs."

Under the 1933 amendment, before the injury complained of can be fixed at any specific point in time, the employment must have caused disability. Disability is nowhere redefined, and at the time of the adoption of the amendment had a clearly defined meaning. It had been defined over and over again in the decisions of this court as being the date on which the injured employee suffered a wage loss. There is no evidence in this case which shows that the deceased, Stanley Czerwinski, ever suffered a wage loss in the sense in

which that term was used in the law. It appears from the evidence that he was always a "slow" worker. Under the requirements of the N. R. A. code he could not do enough piece work to earn the minimum wage, not by reason of his silicosis or for any other reason than that he was not quick enough in his movements and reactions to get through with the necessary minimum of work to earn the wage. Therefore he was discharged. He never thereafter entered the employ of the defendant or anyone else. The medical evidence is to the effect that he could have continued to perform subsequent to his discharge for a considerable time at least as he had done prior thereto. His sole deficiency was want of speed, not want of ability to do the work at a slower speed. The fact that he thereafter, at a time when he was not employed, suffered from a complication of diseases which incapacitated him from further labor of any kind does not establish disability as it had been defined.

This appears to be another attempt to get by construction what the legislature has declined to give by specific enactment. The amendment takes care of certain classes of employees, to wit: Those who have suffered a disability, and as a result thereof have been incapacitated from performing their work in the usual and customary way, and as a result have sustained a wage loss. The date of injury ascribed to such a condition by the amendment is the last day of work for the last employer whose employment caused the disability. However, under the act as amended, before there can be compensable injury there must be disability. That term having a well-defined technical meaning in the law, the court is required to adopt that meaning in the construction of the statute. Sec. 370.01 (1), Stats.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings. No costs to be taxed.

FAIRCHILD, J. (*dissenting*). The statutes, as they were before the amendment of 1933, did not provide for an award

in such a case as this. The trend of opinion as reflected in legislation and judicial opinion was toward the recognition of a relationship between employer and employee under certain circumstances that amounted to a status, and it was indicated in decisions in this court that this status might be the basis of a valid claim during intervals when the employee was not actually present at his work. This court, so far as it could with propriety, suggested needed legislation. In 1933, sec. 102.01 (2), Stats., was amended by chs. 314 and 402, Laws of 1933, and, as amended, now reads, so far as material here: ". . . 'Injury' is mental or physical harm to an employee caused by . . . disease. . . . 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of . . . the last day of work for the last employer whose employment caused disability."

The opinion by the court holds that before the injury complained of can be fixed at any specific point of time, the employment must have caused disability; that is, a wage loss. The word "disability" is held in the opinion to mean the same disability as was recognized prior to the amendment, which meaning this court was obliged to accord to the word as then used in order to make the previous legislation workable and effective. See *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772; *North End Foundry Co. v. Industrial Comm.* 217 Wis. 363, 258 N. W. 439. Because this term "disability" had been so definitely defined, it may be regretted that the legislature did not more clearly state its purpose by redefining that term at the time of the adoption of the amendment, at least so as to have avoided occasion for misunderstanding over the purpose of the legislature to do away with wage loss as a sole test of disability. An adherence to the meaning of the word "disability" in the compensation act prior to the amendment leads logically to the conclusion reached by my brethren, and unless from the context it can be said that the word as now

used, is not used with the meaning theretofore given the word, this dissenting opinion is not justified. It must be conceded that under the statutes and decisions prior to 1933, construing it, the word "disability" had a plain and unambiguous meaning, and that this meaning still attaches, and the word is presumed to be used in that sense unless it clearly appears that it was not intended so to be used. *Nolan v. Milwaukee, Lake Shore & Western R. Co.* 91 Wis. 16, 64 N. W. 319; *Nekoosa-Edwards P. Co. v. Minneapolis, St. P. & S. S. M. R. Co.* 217 Wis. 426, 259 N. W. 618.

I believe the sound rules of construction enable us to discover the legislative intent to be that "injury" in industrial disease actions occurs when the employee is definitely affected with the disease. The statutes now say "injury" is physical harm to an employee caused by disease; that the time of the injury is to be fixed as the last day of work for the last employer whose employment caused disability. The meaning of disability is shown by the preceding words to be physical harm, and the date is fixed as the time the employment is terminated. The language of the amendment clearly indicates that the burden of this human breakdown shall be borne by the employer in whose interest the employee was engaged when he contracted the occupational disease which grew out of and was incidental to that employment. I may quote here from an opinion in which Mr. Justice OWEN spoke for this court as follows:

"It is apparent that by this amendment the legislature intended the accomplishment of some purpose. That it was the legislative intent to compensate occupational disease there can be no question. If this obvious purpose comes into collision with a provision of the act the literal application of which will defeat the legislative purpose of providing compensation for occupational disease, we are confronted with a problem of statutory construction.

"The most salient principle of statutory construction is to give effect to the obvious legislative intent. To accomplish this end is one of the gravest duties of the judiciary." *Wis-*

*consin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191.

I am of the opinion that the amendment clearly discloses a purpose of using the word "disability" in a different sense than that previously used; that now injury is physical harm caused by disease. This, by the plan of the amendment, gives an added importance to the relationship in the whole scheme of sec. 102.12, Stats., which contains, among other provisions, this one:

"Absence of notice shall not bar recovery if it is found that there was no intention to mislead the employer, and that he was not misled thereby. Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application filed with the commission within two years from the date of the injury or death, or from the date the employee or his dependent knew or ought to have known the nature of the disability and its relation to the employment, the right to compensation therefor shall be barred."

In the cases which have come to our attention, the complete injury has, for all fair purposes, appeared with sufficient exactness, and I believe in each instance was susceptible of proof as to cause, development, and existence.

By following this construction of the amendment, we can place the burden with sufficient accuracy and more exact justice where it actually belongs. Following this rule, it would be possible to escape the confusion arising where an employer discharges a sick man whose disease has advanced to the point where definite impairment is certain shortly to result. Under any other ruling, an employer who discharges an employee may escape responsibility and shift an undue burden to a new employer who may chance to hire the already injured man, or in case the man is not rehired compensation would fail entirely. This construction will also avoid the consequences following a case of absolute discharge from hazardous employment and re-employment in an industry not carrying the same hazard. *Hayes v. Industrial Comm.* 202 Wis. 218, 231 N. W. 584.

I apprehend no difficulty in working out the scheme on the basis here suggested. The employer knows or ought to know of these hazards, ofttimes being better advised, at least as to the possibilities of industrial diseases, than the employee.

The protective practices now inaugurated by employers not only show their desire to protect their employees, but also show their recognition of the slow and insidious impairment of health possibly attendant upon certain occupations. Masks, air suction, powerful ventilating devices are visible evidences of industrial sense of responsibility. Some employers arrange their work so as to limit the time exposure of men to operations that carry the menace of industrial disease. To accept any construction which furnishes a bridge over which the liability created by a careless or indifferent employer may pass to one who has the same hazard in his business, but has reduced it to a minimum, does not seem to recognize the real intention of the legislature as expressed in the amendment.

For the reasons here suggested, the finding of the commission that Czerwinski was physically disabled to the extent of forty or fifty per cent when he left the employment of appellant, and the finding that because of the injury caused by the disease respondent was unable to perform his usual and customary work in the ordinary way, fixes the liability upon appellant. If this reasoning is sound, the judgment should be affirmed.

The following memorandum was filed February 4, 1936:

PER CURIAM (*on motion for rehearing*). The Industrial Commission moves for a rehearing, upon the following grounds:

"(1) Since differences of opinion have arisen concerning the scope of this court's decision, it would be exceedingly helpful in the administration of the compensation act if a definite pronouncement would be given on the question of whether under the 1933 amendment compensation is payable

when disability first occurs after the termination of the employer-employee relationship; and (2) it is urged that the court should hold that the effect of the 1933 amendment was to bring within the act the so-called presumed wage loss doctrine in cases where workmen become disabled after the termination of the employer-employee relationship."

Briefs were filed upon this motion by the plaintiffs and by attorneys appearing *amicus curiæ*. In all these briefs it was conceded that the decision in this case was correct; that what in fact is sought is a clarification of the law under the 1933 amendment. This same question is raised in *Schaefer & Co. v. Industrial Comm., post,* p. 289, 265 N. W. 390. In view of the fact that what might be said by way of clarification of the statute in this case would be to a certain extent *obiter dicta,* not being necessary for the decision, it is thought that the matter might be more appropriately dealt with in *Schaefer & Co. v. Industrial Comm.* Therefore, in connection with that case, we will consider the briefs filed on rehearing in this case together with all other briefs filed relating to the interpretation of the 1933 amendment.

Motion for rehearing in this case is denied without costs.