SCHAEFER & COMPANY and another, Appellants, vs. INDUS-
TRIAL COMMISSION and another, Respondents.

*December 6, 1935—February 4, 1936.*

For the appellants there was a brief by *Wood, Warner & Tyrrell,* attorneys, and *Jackson M. Bruce* of counsel, all of Milwaukee, and oral argument by *Mr. Bruce.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Andrew W. Brunhart* of Milwaukee, for the respondent Marsz.

ROSENBERRY, C. J.    Max Marsz was a married man, at the time of the hearing fifty-nine years of age.    He had been in the employment of Schaefer monument company twenty-six years.    He noticed that there was something wrong with his chest before he left his employment.    A different insurance carrier going upon the risk required that the men employed be examined.    As a result of such examination by Dr. Sander, it was discovered that the claimant had silicosis, and he was discharged on February 5, 1934.    Upon the hearing, four physicians testified as to the physical condition of the applicant.    The commission did not make formal findings, but its order contains the following recitals:

"There is ample evidence to sustain the examiners' findings that the applicant is suffering from an advanced stage of silicosis, and that the exposure in the employer's plant caused his condition.    Applicant left work on February 5, 1934, and up to the time of hearing had not worked following that date.    The medical testimony is not as much in dispute as is usual in silicosis cases. . The commission is convinced that it is wholly unsafe for the applicant to engage in work which entails the breathing of silicosis dust, and that his disease has now reached a point where he is no longer

able to do work of a heavy type but must engage in light work requiring little exertion. That condition is obviously one which causes considerable disability. The percentage of disability [50%] placed by the examiners, we believe, is warranted by the evidence and is not over liberal."

Upon the hearing the trial court was of the view that "under the amendment [1933] it is specifically provided that the date of the injury which caused the disability is the date of the last day of work for the last employer whose employment caused disability; and manifestly the date of injury is fixed by the statute as occurring while the relation of employer and employee still existed, so that the disability and consequent wage loss because of the injury began at that date during the employment—in the same manner as in the case of a physical accident—injury, the wage loss then begins,—and brings the applicants within the provisions of the compensation law."

Prior to the amendment of 1933, sec. 102.01 (2), Stats., so far as material, read:

" 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury or the date when the disability from the occupational disease first occurs."

By. ch. 314, Laws of 1933, this was amended to read:

" 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury or in the case of disease, the last day of work for the last employer whose employment caused·disability."

In *Milwaukee M. & G. I. Works v. Industrial Comm.*, *ante,* p. 244, 263 N. W. 662, 265 N. W. 394, it was held under the facts of that case that an employee suffering from silicosis was not entitled to compensation because he had sustained no disability, for the reason that he had suffered no wage loss.

In order to properly interpret this amendment, consideration must be given to the state of the law as it existed when the amendment was made. This court has consistently held

under the Workmen's Compensation Act that in cases of occupational disease, in order to entitle an employee to compensation, he must have sustained such physical incapacity from disease as renders him incapable of performing his services to the extent that a wage loss results while the employer-employee relationship exists between the parties. *Belle City M. I. Co. v. Industrial Comm.* 180 Wis. 344, 192 N. W. 1010; *Chain Belt Co. v. Industrial Comm., ante,* p. 116, 264 N. W. 502.

In *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191, the court had under consideration a case where, as a result of disease contracted in the course of the employment, an employee died while the plant was shut down. There was no dispute but that his death was caused by the disease. The question was whether or not the relation of employer and employee continued to exist during the period the plant was shut down, and for the reasons there stated it was held that it did.

The Workmen's Compensation Act was revised by ch. 403, Laws of 1931, when the legislature had before it the decision in *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772, and other cases in which the defect in the law was pointed out, yet no change was made in respect to the matter under consideration. The *Wisconsin Granite Co. Case, supra,* was decided in 1932, so that, when the legislature of 1933 enacted ch. 314, Laws of 1933, it did it with the interpretation of the act by this court before it. Certain rules of statutory construction have been adopted by the legislature.

Sec. 370.01 (1), Stats., provides:

". . . Technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning."

In the *Zurich Case, supra,* the court had before it a difficult problem of construction. As was there pointed out, the

statute was drawn to cover accidental injuries without any thought of its application to occupational diseases. The right of recovery for injuries sustained by reason of occupational diseases was then inserted into the statute without a revision, so that the terms in the statute applicable only to injuries were required to be interpreted as applied to occupational diseases. The court pointed out the defects in the statutory procedure, and did the best it could to make the law workable in the interests of its beneficiaries. Because the primary purpose of the law as of all Workmen's Compensation Acts is to compensate in some measure injured workmen for loss of wage-earning power sustained in the industry, the court defined "disability" as used in the statute as being such an injury caused either by accident or occupational disease as results in a wage loss. As already pointed out, that construction has been consistently adhered to. When the legislature adopted the amendment of 1933 it used the word "disability" as thus defined by the court. Under the legislative mandate we are obliged to interpret the statute in accordance with the meaning theretofore ascribed to that word. This we attempted to do in the *Milwaukee M. & G. I. Works Case, supra.*

It is manifest from the arguments of counsel here that the controversy no longer centers about disability. All parties concede disability as used in the 1933 amendment must be defined as an injury which causes a wage loss. The question now is, What is meant by "wage loss?" And here again we are confronted by the fact that there is a fundamental difference between accidental injury and occupational disease, in that one occurs at a point in time and the appearance of the other may involve a long period of time. On behalf of the attorney general it is argued that in the *Wisconsin Granite Co. Case, supra,* and *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682, awards have been sustained where made upon a presumption of wage loss under the facts of those cases.

Wage is dependent upon two factors: Time and rate of compensation. In the *Zurich Case, supra,* it was held that an employee who was transferred from a place of exposure to outside work at a diminished wage, suffered a wage loss; that is, his rate of compensation per unit of time was diminished. There can be no doubt that a person who is so disabled that he can perform no service at all, and because of his incapacity loses both time and rate, sustains a wage loss, and that was what was held in the cases referred to.

In the *Wisconsin Granite Co. Case, supra,* the employee died as a consequence of occupational disease. The same was true in the *Michigan Quartz Silica Co. Case;* the question under consideration being there whether or not at the time of the death the employer and employee relationship existed. Attention was not focused upon "wage loss" in those cases.

Another similar case is *Kannenberg Granite Co. v. Industrial Comm.* 212 Wis. 651, 250 N. W. 821, where, it appearing that the employee died within four months after he quit his employment because of occupational disease, a finding of compensable disability was made upon undisputed evidence.

The real source of difficulty in silicosis cases is that many men suffering from the ailment in some of the various stages are able to and do continue to work and receive full compensation therefor long after they have sustained what has been referred to as a medical, but what might be more properly referred to as a pathological disability, and therefore as a matter of fact sustain no wage loss. It is because the legislature has so far seen fit to withhold compensation for physical impairment which is not of a kind or of a degree which results in the physical incapacity of the claimant to work that the difficulty in these cases springs. There is a feeling that a person who has sustained loss of physical vigor, and had his system invaded by foreign substances which may and often do result in impairing his ability to work and not infrequently in death, should have compensation. For that reason there

is constant pressure on the court to enlarge legislative enactments by construction so that compensation may be awarded in such cases. If the legislature of 1933 had intended that the term "disability" as used in the 1933 act was to mean so-called medical or pathological disability, as distinguished from actual physical incapacity to work, it would undoubtedly have said so. The whole matter was fully before it. The question now is, What did the legislature say?

This court had said that the injury or wage loss must be sustained at a time when the relation of employer and employee existed. The act of 1933 clearly says that the time of injury shall be the last day of work for the last employer whose employment caused disability. This obviously refers the "time of injury" back to a point in time when the employer and employee relationship existed. So that the problem which is presented in the *Wisconsin Granite Co. Case, supra,* and similar cases no longer arises. Even if a plant shuts down and an employee is discharged and is not thereafter employed, if he is thereafter disabled, the time when his disability occurs is referred to the last day of employment which caused his disability. However, in order to sustain an award, there must be disability which means such a physical incapacity to work as results in a wage loss. Therefore, as already pointed out, the question comes down to what constitutes a wage loss. In a case where a man is dead and left his work because of the occupational disease which caused his death, there can be no doubt that a wage loss was sustained.

In the case under consideration, Marsz, when he was told of his discharge, claimed to the doctor that he was all right and could continue to do his work. He said afterward that he made that representation because he figured he had a family to support. One of the doctors testified that he was one hundred per cent disabled, quite apparently basing his opinion in part upon the fact that Marsz would find it difficult to procure employment and in part upon the fact that he could do

only light work. Another doctor testified that the applicant could continue work which did not require much physical effort. The doctors were unanimously of the opinion that continuance in his present employment would not alter the end result. One doctor testified: "It [silicosis] is going to progress regardless of what the men do."

Another physician testified: "It is my opinion considering all types of work that he is still able to do at his age what I would consider fifty per cent of permanent disability."

Three of the doctors were also of the opinion that applicant might have continued work during what would be a normal working life. When we consider that in this case it is agreed that the applicant is suffering from silicosis, that as a result of it he is incapable of more than slight physical exertion, that by reason of his physical incapacity due to silicosis he can be employed only in occupations which involve so-called light work, we cannot say that there is no evidence which sustains the finding of the commission that he has sustained a wage loss, which, measured by the rate of compensation he had theretofore received, amounts to fifty per cent.

In the *Milwaukee M. & G. I. Works Case, supra,* the commission set aside the findings of the examiner as to wage loss, and very clearly awarded compensation for so-called medical disability. The workman in that case was never able to earn a full wage, and there was no proof that he in fact suffered any wage loss.

Whether or not there was a wage loss while the employer-employee relationship existed was comparatively easy of ascertainment. When by the amendment the fact of injury may be placed in the indefinite future, and referred back to the last day of work for the last employer whose employment caused it, thus permitting the introduction of many confusing factors in determining the degree of partial disability,

a much more difficult problem is present. While the facts in such a case do not present a problem impossible of solution, a great responsibility is placed upon the finder of the facts. It will be necessary to distinguish carefully between medical or pathological disability and actual physical incapacity to work. The medical experts apparently ignore this distinction, and so increase the difficulty of arriving at a just result under the law.

*By the Court.*—Judgment affirmed.