GREEN BAY DROP FORGE COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.*

*September 11—October 6, 1953.*

* Motion for rehearing denied, without costs, on December 30, 1953.

40

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the appellant Albert Wojcik there was oral argument by *M. Michael Essin* of Milwaukee.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

A brief was filed by *Padway, Goldberg & Previant,* attorneys, and *Albert J. Goldberg* of counsel, all of Milwaukee, for the Wisconsin State Federation of Labor as *amicus curiae.*

CURRIE, J. Counsel for the respondent employer and its insurance carrier advance the following two contentions for affirmance of the trial court's determination that the employee cannot as a matter of law recover workmen's compensation for the partial permanent loss of hearing he has sustained as a result of the noise to which his ears were subjected in the course of his employment by the employer:

(1) The employee sustained no wage loss and without such wage loss there can be no disability arising from occupational disease which is compensable under the Workmen's Compensation Act; and

(2) An employee cannot recover workmen's compensation based upon disability due to occupational disease without first having terminated his employment with the employer under the definition of *"date of injury"* contained in sec. 102.01 (2), Stats. 1951.

This is the first case to reach this court in which workmen's compensation has been awarded for an impairment of faculty or disability listed in the schedule contained in sec. 102.52, Stats. 1951, or for a percentage of the schedule disability based upon sub. (3) of sec. 102.55, Stats. 1951, which provides in part as follows:

"For all other injuries to the members of the body or its faculties which are specified in this schedule resulting in permanent disability, though the member be not actually severed or the faculty totally lost, compensation shall bear such relation to that named in this schedule as disabilities bear to the disabilities named in this schedule."

This court has repeatedly held that in the case of occupational disease, such for example as silicosis, there can be no disability within the meaning of the Workmen's Compensation Act without a wage loss, and that it is the wage loss and not the exposure of the employment which constitutes the disability. Typical of such cases are those of *Milwaukee M. & G. I. Works v. Industrial Comm.* (1936), 220 Wis. 244,

263 N. W. 662, 265 N. W. 394; and *Schaefer & Co. v. Industrial Comm.* (1936), 220 Wis. 289, 265 N. W. 390. For example, in its opinion in the latter case this court stated (p. 291):

"This court has consistently held under the Workmen's Compensation Act that in cases of occupational disease, in order to entitle an employee to compensation, he must have sustained such physical incapacity from disease as renders him incapable of performing his services to the extent that a wage loss results while the employer-employee relationship exists between the parties."

Counsel for respondents rely upon the holding of cases such as these, and quote extensively in their brief from the court's opinions in such cases, in support of their contention that the employee in the instant case is precluded from recovering compensation because he has sustained no wage loss. However, in those cases the court had before it the problem of establishing a disability as a result of occupational disease without giving any consideration to the question of whether the loss due to occupational disease of a member of the body, or the impairment of a faculty, specifically covered by the schedule contained in sec. 102.52, Stats. 1951, would in itself establish the disability, irrespective of any wage loss.

The first schedule of disabilities, for which specified weeks of compensation were provided, was inserted into the Workmen's Compensation Act by amendment in 1913. Then, in 1923, a further amendment was enacted, which in effect applied a relative-injury clause to nonschedule injuries. In the case of *Northern States Power Co. v. Industrial Comm.* (1947), 252 Wis. 70, 73, 30 N. W. (2d) 217, this court considered the problem of whether wage loss was necessary in order to permit the payment of compensation in a nonschedule-injury case. The decision in such case was written by Mr. Justice WICKHEM, and the opinion, after reviewing the legislation in cases prior to the 1923 amendment, stated:

"Down to this point we think it is pretty clear that in all cases of permanent partial disability *other than schedule and relative injuries* the statute was held to require a showing that applicant suffered impairment of earning capacity in the same or other suitable employments." (Emphasis supplied.)

The term *"relative injuries"* in the foregoing quotation refers to those cases where there has been a partial loss of a member, or impairment of a faculty, making it necessary to apply the provision found in sec. 102.55 (3), Stats. 1951, previously quoted herein. Under such statute, the compensation awarded must bear such relation to that named in the schedule as the disability bears to the disability named in the schedule. The foregoing quotation from the opinion of Mr. Justice WICKHEM in the *Northern States Power Co. Case* makes it clear that no wage loss was necessary in order to establish a disability for payment of compensation in the case of schedule and relative injuries.

While it is true that the disability in the *Northern States Power Co. Case* was occasioned by an industrial accident and not an occupational disease, we believe the language used by the court is equally applicable to a schedule or relative disability arising from occupational disease. There is no question but that the schedule of disabilities contained in sec. 102.52, Stats. 1951, is applicable to losses and impairments resulting from occupational disease as well as from industrial accident. If an employee loses a finger or a hand as the result of an industrial accident he is entitled to receive the number of weeks of compensation specified in the schedule, even though he may have sustained no wage loss. If the employee should lose such finger or hand due to long exposure over a period of years to radium or X rays, and he should be continued in his employment without wage loss, there is every logical reason why he should receive the compensation specified under the schedule, the same as if he had lost such finger or his hand as the result of an industrial accident. As mentioned in the statement of facts preceding this opinion, loss of hearing

is one of the schedule disabilities, and no distinction should be made between the case where an employee sustains a loss of hearing by trauma from the case where such impairment of hearing is occasioned by occupational disease.

The conclusion, therefore, seems irresistible, that if the loss of a member, or impairment of a faculty, as a result of occupational disease is one which is provided for in the schedule, or is a partial loss, or impairment, as to which the percentage formula provided for in sec. 102.55 (3), Stats. 1951, is applicable, this in itself establishes a compensable disability, irrespective of any wage loss. Therefore in the instant case the commission rightly held that the employee's loss of hearing due to occupational disease constituted a compensable disability, even though the employee had sustained no wage loss.

We now turn to the second contention of counsel for respondents, that the employee in the case at bar is precluded from recovering compensation because of the fact that there was no termination of his employment by the employer. This contention is based upon the definition of *"time of injury"* contained in sec. 102.01 (2), Stats. 1951, which definition is as follows:

" 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury, or in the case of disease, the last day of work for the last employer whose employment caused disability."

Such definition of *"time of injury"* was incorporated into the Workmen's Compensation Act by an amendment enacted by the legislature in 1933. When the Workmen's Compensation Act was first enacted in 1911, it covered only disabilities due to industrial accidents and not those resulting from occupational disease. Then, in 1919, the legislature, by ch. 668, Laws of 1919, amended the act so as to provide that the provisions thereof *"are extended so as to include, in addition to accidental injuries, all other injuries, including occupa-*

*tional diseases, growing out of and incidental to the employment;"* but it did not amend other provisions of the act. One of the provisions not amended was that which required, as a condition of liability, that "at the time of the accident, the employee is performing service growing out of and incidental to his employment."

As pointed out by this court in *Wisconsin Granite Co. v. Industrial Comm.* (1932), 208 Wis. 270, 275, 242 N. W. 191, the new provision resulting from the amendment in 1919 so as to cover occupational diseases was repugnant to the existing provision requiring that at the time of the accident the employee be performing service growing out of and incidental to his employment. Quite a number of cases involving applications for compensation for industrial diseases (mostly silicosis cases) came before this court under fact situations where the employee had sustained the exposure to silica in the employment of a particular employer. At the time of termination of such employment the employee was not disabled in the sense of having sustained any prior wage loss. Thereafter, the employee (or his dependents in case of the employee's prior death) filed an application for compensation. In such cases this court denied recovery of compensation on the ground that the relationship of employer and employee did not exist when the disability occurred. Typical of such cases is that of *Massachusetts Bonding & Ins. Co. v. Industrial Comm.* (1933), 211 Wis. 52, 247 N. W. 343.

This court deplored the injustice which resulted from denying compensation in such cases where the disability occurred after the termination of employment and pointed out in some of its decisions that the remedy for such injustice must come from the legislature and not the court. Apparently in response to such suggestions on the part of the court, the legislature, in 1933, enacted the definition of *"time of injury"* found in sec. 102.01 (2), Stats. 1951, hereinbefore quoted.

One of the cases which had been decided before this 1933 amendment was *Zurich Gen. Acc. & L. Ins. Co. v. Industrial*

*Comm.* (1930), 203 Wis. 135, 233 N. W. 772. In that case the deceased employee had been employed in the chipping room of the Falk Corporation in Milwaukee from 1911 until the 14th of January, 1920, without interruption. Between then and August 21, 1923, he was off from work for extended periods on two occasions because of illness, undoubtedly due to his exposure in the chipping room to silica. On August 21, 1923, he asked his employer to give him an outdoor job, and on that date was transferred to such outdoor job and worked until October 23, 1927, when he became totally disabled from tuberculosis superimposed on pneumonoconiosis (silicosis). Prior to July 1, 1926, the plaintiff Insurance Company was the insurance carrier of the employer, and after that date the Employers Mutual was such insurance carrier, and the question was which company was liable for payment of compensation in the case. It is undisputed that the outdoor employment after August 21, 1923, was beneficial, rather than harmful, to the employee, but the rate of pay of such employment was $4.20 per week less than he was previously earning. This court held that the employee sustained a wage loss because of occupational disease when he was obliged to take the lower paying outdoor work, and therefore there had been a disability occurring prior to July 1, 1926, and plaintiff, and not Employers Mutual, was liable for the compensation.

Literally construed in the way that counsel for respondents contend in the instant case, the definition of *"time of injury"* contained in the 1933 amendment would have required just the opposite result in the *Zurich Case* if such amendment had been then effective because the last day of work by the employee at the Falk Corporation was October 23, 1927, at which time the Employers Mutual was the insurance carrier. However, in *General A. F. & L. Assur. Corp. v. Industrial Comm.* (1936), 221 Wis. 540, 543, 266 N. W. 224, the court stated, with respect to ch. 314, Laws of 1933, which defined *"time of injury"* as it is now found in the statutes:

"That statute applies only when a wage loss occurs after the relation of employer and employee is terminated. *Schaefer & Co. v. Industrial Comm.* (1936), 220 Wis. 289, 265 N. W. 393. *The law of 1933 was intended to supplement and not to supplant the holding in Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* (1930), 203 Wis. 135, 233 N. W. 772, and other cases in which the defect in the law was pointed out." (Emphasis supplied.)

In other words, the court stated that the 1933 amendment defining *"time of injury"* and *"date of injury"* was not intended to supplant those cases wherein it could be established that disability occurred on some date prior to termination of employment. This directly supports the contention made by the Industrial Commission in its memorandum opinion, and the attorney general in his brief, that the 1933 amendment was intended to take care of those cases where the disability developed after the termination of employment and not to change the law with respect to those cases where disability occurred prior to the date of termination of employment. In the instant case it is established that the employee did sustain a disability while in the employ of the employer because the impairment of hearing sustained as the result of occupational disease was a relative disability for which a percentage of the compensation provided in the schedule for total loss of hearing was payable.

To hold that the definition of *"time of injury"* contained in sec. 102.01 (2), Stats. 1951, required the employee in the instant case to terminate his employment with the employer in order to recover compensation would lead to an absurd result. Let us assume that employees A and B are both working for the same employer in an extremely noisy occupation and as the result of such exposure to noise over a period of years both sustain an identical percentage of impairment of hearing. Employee A then continues in his employment, while employee B quits such employment and goes to work for another employer. Both file applications for workmen's

compensation. Under the interpretation of the statutory definition of *"time of injury"* argued for by respondents' counsel, employee A would be denied compensation, while employee B would be entitled to recover the same. Surely the legislature could not have intended such a result!

In *Connell v. Luck* (1953), 264 Wis. 282, 58 N. W. (2d) 633, this court was called upon to construe sec. 85.61, Stats., which provided that "no vehicle of the tractor type shall be operated unless the driving wheels are protected by suitable fenders." The question before us was whether this statute was applicable to a tractor being operated in farm operations, and not on a public highway. Upon its face, the statute was not ambiguous, and literally interpreted would cover any tractor whether operated on a public highway or not. However, we held that to so interpret the statute would lead to an absurd and unreasonable result, and that the court therefore was entitled to resort to the legislative history of the statute to ascertain the legislative intent. The legislative history made it clear that the statute was intended to apply only to tractors being operated upon public highways, and we so construed the statute. The proper rule of statutory construction in such a case is well set forth in headnote 3 of *Connell v. Luck, supra,* as follows:

"Where obscurity exists in a statute because it is unreasonable or absurd if given its literal meaning, the court may look to its history, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, although it is out of harmony with or even contradicts the letter of the enactment."

The Industrial Commission acted within this rule of statutory construction when it interpreted in the instant case the definition of *"time of injury"* contained in sec. 102.01 (2),

Stats. 1951, as applied to a situation in which a disability due to occupational disease had occurred without termination of employment. It construed the words "the last day of work for the last employer whose employment caused disability" of the statute, as applied to such a fact situation, to mean the last day of work before the filing of the application for compensation. Such a construction is the only one compatible with the legislative history.

The 1953 legislature enacted ch. 328, Laws of 1953, amending sec. 102.565, Stats., which specifically applies to cases of impairment of hearing as a result of exposure to industrial noise. Such statute, as so amended, requires a discharge, or transfer of employment, due to the disability, and as a result of such discharge or transfer the employee sustains a wage loss, as conditions precedent to the employee recovering compensation for such impairment of hearing. Respondents' counsel argue that this establishes prior legislative intent that both wage loss and termination of employment were necessary for recovery under the Workmen's Compensation Act before this amendment. However, as pointed out by the brief of the attorney general, if the law before the enactment of ch. 328, Laws of 1953, was the same as provided in such chapter, there would have been no occasion for enacting the same. If any presumption applies, it is that the legislature by reason of the amending enactment sought to change the existing law. 1 Sutherland, Statutory Construction (3d ed.), p. 412, sec. 1930. If such new enactment had not amended an existing statute, but instead had dealt with a subject which was previously a matter of common law, then the presumption would be that no change was intended in case of ambiguity. *Leach v. Leach* (1952), 261 Wis. 350, 357, 358, 52 N. W. (2d) 896.

*By the Court.*—Judgment reversed and cause remanded with directions to confirm the order of the Industrial Commission.

GEHL, J. (*dissenting*). Sec. 102.01 (2), Stats. 1951, defines "time of injury," in case of disease, as "the last day of work for the last employer whose employment caused disability." There is nothing ambiguous or indefinite in the definition. There has been no "last day of work" in this case; at the time of the hearing before the commission claimant was still employed at the same employment and without wage loss.

The commission found it necessary to define a term which is as clear and definite as one can be made, and applied an arbitrary definition which is completely at variance with that of the statute.

Had the commission defined the "last day of work" as the preceding Christmas Day, for instance, would we give the definition our blessing? Why not? The choice made by the commission bears as little resemblance to the statutory definition as would that which I suggest as a possibility.

I am unable to read out of any of the statutory provisions the authority or need for the commission's construction. Nor do I find in any of the cases cited by the majority any suggestion that its construction be permitted, to say nothing of its being required.

A feeling of sympathy for the claimant and others similarly situated might, if there were no other means of affording them what appears to be merited relief, entice one to concede to the commission the right to supply what it believes to be an omission in the statutes. Even under those circumstances we should not recognize the power. There is, however, a means of supplying the relief and the omission—by the act of the legislature, whose exclusive function it is to amend the statute.

The commission did not give construction to an ambiguous statutory definition—it sought to amend it by inserting one which cannot, even by implication, be read out of it. Because I am unable to agree that it is the province of the court or an administrative agency to legislate, I respectfully dissent.

The following opinion was filed December 30, 1953:

CURRIE, J. (*on motion for rehearing*). In support of the motion for rehearing made by the plaintiff employer and its insurance carrier, there has been filed a deluge of briefs *amici curiae*. We, therefore, have had the benefit of those briefs, as well as that of counsel for plaintiffs, in passing on such motion. These briefs have been most ably prepared and we doubt if there is any aspect of the problem relating to recovery of workmen's compensation benefits for loss of hearing occasioned by industrial noise that has not been thoroughly explored therein.

Two questions of constitutionality are raised for the first time in these briefs submitted in support of the motion for rehearing. It is contended:

(1) The Industrial Commission engaged in judicial legislation when it construed sec. 102.01 (2), Stats., defining "time of injury."

(2) Secs. 102.52 and 102.55, Stats., which provide benefits for "schedule" and "relative" disabilities, work an unconstitutional denial of due process of law, in so far as they require substantial compensation for fractional losses of hearing, because based upon a conclusive legislative presumption of wage loss.

This court recently held in *C. F. Trantow Co. v. Industrial Comm.* (1952), 262 Wis. 586, 590, 55 N. W. (2d) 884, that questions of constitutionality of a provision of the Workmen's Compensation Act not previously raised cannot be considered when urged for the first time on appeal. In our opinion in that case we stated:

"The question of the constitutionality of the statute was not timely raised and has not been argued by the attorney general. It was not considered below and is not before us on this appeal. In *Baker v. Leenhouts* (1950), 257 Wis. 584, 44 N. W. (2d) 544, in accord with the rule that 'the constitutionality of a statute cannot be raised for the first time in

an appellate court of a state or upon a rehearing in a civil case' (11 Am. Jur., Constitutional Law, p. 772, sec. 125), we quoted from *Booth Fisheries Co. v. Industrial Comm.* cited below, which held that (p. 588):

" 'It is well settled that constitutional rights, as well as any other personal or property right, may be waived.'

*"Booth Fisheries Co. v. Industrial Comm.* (1924), 185 Wis. 127, 132, 200 N. W. 775; *Hayes v. Hoffman* (1927), 192 Wis. 63, 70, 211 N. W. 271; *State v. Retail Gasoline Dealers Asso.* (1950), 256 Wis. 537, 41 N. W. (2d) 637. We reserve any ruling on the question of the constitutionality of this statute."

By the amendment made to sec. 102.52 (17) and (18), Stats., by ch. 328, Laws of 1953, loss of hearing if due to occupational disease is no longer a schedule injury, but if occasioned by accident or sudden trauma it is. Before such amendment there was no distinction made by the legislature between loss of hearing due to industrial noise and that due to trauma so far as the schedule set forth in sec. 102.52 was concerned. The gist of the holding of our original opinion was that the occurring of an impairment covered by the schedule established a compensable disability regardless of actual wage loss and irrespective of whether caused by industrial accident or occupational disease. No sufficiently persuasive argument has been advanced in the briefs on the motion for rehearing to convince us that our former conclusion in this respect was erroneous.

It is again strenuously urged that the enactment of the amendments contained in ch. 328, Laws of 1953, evinces a retroactive legislative intent that there can be no recovery of compensation for loss of hearing without actual wage loss. However, the legislature by a later enactment cannot establish or affect the construction of a former act so as to have the same operate retroactively. *Northern Trust Co. v. Snyder* (1902), 113 Wis. 516, 530, 89 N. W. 460; 50 Am. Jur., Statutes, p. 330, sec. 337.

Counsel for plaintiffs in their brief in support of the motion for rehearing point out that "thousands" of applications have been or will be filed subsequent to July 1, 1953 (the effective date of the amendments enacted by ch. 328, Laws of 1953), for loss of hearing due to industrial noise in which the impairment of hearing occurred prior to July 1, 1953; and urge that we clarify our former decision as to whether these cases will be governed by the new amendments or under the act as it stood prior thereto.

Sec. 102.03 (4), Stats., provides:

"The right to compensation and the amount thereof shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury."

The attorney general points out in behalf of the Industrial Commission that, since "the date of injury" is the last day of work prior to filing the application in these loss-of-hearing cases due to industrial noise where the employee is still employed, therefore, these cases arising under applications filed after July 1, 1953, will be governed by the statutes as amended by ch. 328, Laws of 1953.

We feel compelled to refrain from expressing our views on this point because to do so would be to render an advisory opinion extraneous to the issues presented in the particular case now before this court for review.

*By the Court.*—Motion for rehearing denied.

GEHL, J. (*dissenting on motion for rehearing*). I do not recede from my original dissent in which it was stated that the majority has placed its stamp of approval upon the seizure of authority by the Industrial Commission. I am authorized to state that Mr. Justice FAIRCHILD desires it noted that further consideration of the case has convinced him also that the judgment should be affirmed.