Lawrence R. MARIE, Respondent,

v.

**STANDARD STEEL WORKS, a Corporation, Employer, and Employers Mutual Liability Insurance Company, Insurer, Appellants.**

No. 22650.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

G. W. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant.

Harry C. Clark, Kansas City, for respondent.

BROADDUS, Presiding Judge.

This is a workman's compensation case. On October 29, 1953 Lawrence R. Marie, respondent, filed a claim for compensation against his employer Standard Steel Works, and its insurer, Employers Mutual Liability Insurance Company. This claim stated that Mr. Marie had sustained a permanent loss of hearing due to traumatic injuries to both ears as a result of severe noise in connection with his job. The

claim further stated that the "Date of accident and/or series of accidents and/or occupational disease was on or about December 1, 1952." The amended answer to the claim admitted the jurisdiction of the Division of Workmen's Compensation to hear the evidence, but denied that the employee had suffered any injury or compensable disability or suffered an accident arising out of and in the course of his employment with the employer.

At the hearing it was admitted that Standard Steel Works was an employer operating under the provisions of the Missouri Workmen's Compensation Law and that its liability under said law was fully insured by the Employers Mutual Liability Insurance Company. It was further admitted that on or about December 1, 1952, Marie was an employee of Standard Steel Works and was working under the provisions of the Compensation Act. It was likewise agreed that the average weekly wage was $75.

Hearing was held on the claim at various times before a Referee, and on March 5, 1956, said Referee entered an award in favor of respondent and against appellants and awarded as compensation for *occupational disease* the sum of thirty dollars ($30) per week for 80.803 weeks based on a finding of 48.09% combined permanent loss of hearing in both ears. Said Referee further found the date as "On or before December 1, 1952", and that employee "Was employed as a welder and as such he was required to work inside steel tanks being assembled while other employees were engaged in working on the same and other tanks close by using sledges, hammers and grinders both inside and outside said tanks. Employee was thereby subjected and exposed to constant, daily and excessive noise of an injurious intensity over a period of some six or seven years prior to filing of claim herein."

In due time appellants filed an application for a review of the award of the Referee by the Industrial Commission. On June 20, 1956, the claim was submitted to the Industrial Commission on oral argument and briefs of counsel for all parties. By a final award the Commission affirmed in all respects the award of the Referee. By its additional findings of fact and conclusions of law the Commission declared:

"We find and believe from all the evidence that noise of sufficient quality, intensity and duration can and does result in loss of hearing; that the employee, Lawrence R. Marie, while in the employ of Standard Steel Works, a corporation, worked in noise of a quality and quantity and over a sufficient period of time to result in loss of hearing; that said employee was required to and did work under conditions which constituted a particular and peculiar hazard of the employment and which subjected and exposed him to noise of an injurious intensity over a period of six or seven years; that, as a result thereof, said employee sustained cumulative damage to both inner ears; and that such exposure to noise, occurring repetitively and culminating in disability, if ascribed to accident, would necessitate our dealing with innumerable traumatic episodes entailing innumerable dates of accidents. Gould's Medical Dictionary, Fifth Edition, defines disease as 'a disturbance of function or structure of any organ or part of the body'. Occupational disease is not defined by statute in this state, but occupational diseases have been defined as those that occur incident to employment and are due to some factor peculiar to the occupation. Therefore, compensation in this case is predicated on the basis of occupational disease as the result of gradual destruction or damage to the auditory nerve endings bilaterally, caused by the noise exposure in his occupation as found above. * * *"

In due time appellants filed with the Commission notice of appeal to the Circuit Court of Clay County, which court on February 11, 1956, affirmed the final award of the Commission. From said judgment employer and insurer perfected this appeal.

On this appeal appellants do not contend that the Commission's findings, that respondent sustained a cumulative loss of hearing of 48.09% as a result of noise incidental to his employment, are not sustained by the evidence. They do contend, however, that the Commission "acted without and in excess of its powers in declaring that alleged 'noise-induced hearing loss' is an occupational disease within the meaning of the Missouri Workmen's Compensation Law." The question is one of first impression in this State.

The Workmen's Compensation Act as originally enacted (Laws of Missouri 1925, p. 375, sec. 7; R.S.Mo.1929, § 3305(b); now V.A.M.S. § 287.020 contained this provision:

"* * * Provided, that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases."

In 1931 the Legislature enacted the so-called "Occupational Disease Amendment," Laws of Missouri, 1931, p. 382, R.S.Mo. 1939, § 3695 (now V.A.M.S. § 287.020) adding to the above proviso of the original law so that the section read after amendment:

"Provided, that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases, unless the employer shall file with the commission a written notice that he elects to bring himself with respect to occupational disease within the provisions of this act and by keeping posted in a conspicuous place on his premises a notice thereof * * *."

It is clear from the above statutory revision that the only rights with respect to occupational diseases which were brought under the Compensation Act were *"rights under the laws of this state* pertaining to occupational diseases." Prior to the amendment of 1931, the employees' "rights under the laws of this state" were enforceable by proceedings in the courts; after the amendment, by election of the employer and acceptance by the employee, such rights were cognizable under the Workmen's Compensation Law.

What were the "rights under the laws of this state" which were so recognized by the Legislature? They are not difficult to ascertain; since 1913 this State has had among its laws provisions for the health and welfare of persons engaged in certain occupations. Laws 1913, p. 402 et seq., R.S.Mo.1929, § 13252 et seq., V.A.M.S. § 292.300 et seq. In the present Vernon's Annotated Statutes such sections are under the general title "Prevention of Occupational Diseases." V.A.M.S. § 292.310 (and prior enactments verbatim), set forth the kinds and types of conditions to which the Legislature referred as "occupational diseases:"

"292.310. Articles considered dangerous to health.

"The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees."

■ It is clear that the Legislature intended, and said, that "occupational diseases" are those which may be caused by the handling, and lodging within the body, of chemically toxic substances. The following sections emphasize and underline this intention, providing as they do for proper working clothing, for respirators against "noxious or poisonous dusts," V.A. M.S. § 292.320; for medical examination of employees in direct contact with the poisonous agencies or injurious processes "referred to," etc. It would be difficult to express more clearly the Legislative intent; "occupational diseases", without attempting

a categorical listing of each and every one by medical nomenclature, are those produced by poisonous chemicals, fumes, gases and dusts; substances which enter the body as foreign matter and lodge therein to the worker's harm. From this it is apparent that appellants' contention—that noise-induced hearing loss is not an occupational disease within the meaning of our compensation laws—is well taken. It is true that the Workmen's Compensation Act is to be liberally construed in favor of the employee, but this does not mean that the Commission is authorized to add to the type and character of the conditions which the Legislature has indicated and recognized as occupational diseases. Allen v. St. Louis-San Francisco Ry. Co., 338 Mo. 395, 90 S.W.2d 1050, 1053; 58 Am.Jur. sec. 27, page 597.

Respondent's brief directs our attention to the case of Green Bay Drop Forge Co. v. Industrial Commission, 265 Wis. 38, 60 N.W.2d 409, 61 N.W.2d 847, saying it "is the only case squarely in point with the case at bar." It then makes the following statement respecting that Wisconsin decision: "This case is particularly significant because the Supreme Court of Wisconsin directly decided that a loss of hearing due to loud noises was an occupational disease."

That statement is completely erroneous, as a reading of the opinion will show. The point was not even raised or presented to the Court for a decision. The opinion itself recites (loc. cit. 410, 411 of 60 N.W.2d):

"Counsel for the respondent employer and its insurance carrier advance the following two contentions for affirmance of the trial court's determination that the employee cannot as a matter of law recover workmen's compensation for the partial permanent loss of hearing he has sustained as a result of the noise to which his ears were subjected in the course of his employment by the employer:

"(1) The employee sustained no wage loss and without such wage loss there can be no disability arising from occupational disease which is compensable under the Workmen's Compensation Act; and

"(2) An employee cannot recover workmen's compensation based upon liability due to occupational disease without first having terminated his employment with the employer under the definition of 'date of injury' contained in section 102.01(2), Stats. 1951."

The entire opinion is devoted to those two questions, and nowhere in the opinion does that Court decide or even discuss whether or not noise-induced hearing loss is an occupational disease. The reason for the omission of any discussion or judicial pronouncement in that regard can also be found by implication in the opinion itself. The court said in part (loc. cit. 415 of 60 N.W.2d):

"The 1953 legislature enacted ch. 328, Laws of 1953, amending section 102.565, Stat., *which specifically applies to cases of impairment of hearing as a result of exposure to industrial noise.* Such statute, as so amended, requires a discharge, or transfer of employment, due to the disability, and as a result of such discharge or transfer the employee sustains a wage loss, as conditions precedent to the employee recovering compensation for such impairment of hearing." (Emphasis ours.)

Thus it can be seen from the opinion itself that this is not a judicial pronouncement that noise-induced hearing loss is an occupational disease; instead, it is an instance of a Court following a clear expression of legislative intent, accompanied by creation of provisions for implementing that intent. Insofar as that decision is at all applicable to the instant case, it supports our holding that it is not for the Commission or the Courts to create an entirely new class of compensable matters; that would be a matter of public policy to be declared by the Legislature.

The judgment is reversed.

All concur.