DELTA OIL COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*June 4—June 22, 1956.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Powell.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent John W. Wilson there was oral argument by *L. A. Tarrell* of Milwaukee.

GEHL, J.  John Wilson was employed by the Delta Oil Company from 1934 to 1948. While so employed he contracted silicosis as a result of exposure. During the fall of 1948 he lost about six weeks of work because of illness. In December, 1948, he transferred employment to the Viking Oil Company and was there employed until April, 1950, when he took employment with the S & M Asphalt Distributing Company, where he remained as an employee until sometime in December, 1953. The hearing in this matter was held on January 28, 1954.

On July 18, 1950, he filed with the Industrial Commission an application for the benefits provided by sec. 102.565, Stats. 1947, the provisions of which are as follows:

"(1) When an employee working subject to this chapter is, because he has a nondisabling silicosis, discharged from employment in which he is engaged, or after an examination of an employee as provided in subsection (2) and a finding by the commission that it is inadvisable for the employee to continue in his employment, such employee terminates his employment, and suffers wage loss by reason of such discharge or such termination of employment, the commission may allow such compensation on account thereof as it may deem just, not exceeding thirty-five hundred dollars. . . .

"(3) If an employee shall refuse to submit to such examination after direction by the commission, or any member or examiner thereof, or shall in any way obstruct the same, his right to compensation under this section shall be barred. . . .

"(5) If, after his discharge by an employer or after termination of his employment, the employee becomes disabled, not because of additional exposure, but due to exposure in such employer's service, any amount which shall have been paid under this section shall be credited against compensation found to be payable by such employer for disability caused by silicosis, but shall not operate to reduce the number of weeks provided under the law for disability.

"(6) Payment of a benefit under this section to an employee shall estop such employee from any further recovery whatsoever from any employer under this section."

The application was by order dated November 13, 1950, dismissed because his employment had not been terminated on account of nondisabling silicosis and he had failed to prove a wage loss by termination of employment. No appeal was taken.

On May 5, 1953, Wilson filed with the commission an application for general benefits under the general provisions of ch. 102, Stats. On June 9, 1954, the commission entered an interlocutory award granting temporary total disability benefits for the period November 15, 1952, to March 23, 1953, and 50 per cent temporary partial disability benefits from March 23, 1953, to the date of the hearing. No compensation has been paid.

This action for a review of the last-named order resulted in judgment confirming the award entered on December 1, 1955.

It is contended by the plaintiff employer that action by the commission upon the application for general benefits which was made on May 5, 1953, is barred by the provisions of sec. 102.12, Stats. 1947. They are as follows:

". . . if no payment of compensation . . . is made, and no application filed with the commission within two years from the date of the injury . . . or from the date the employee . . . knew or ought to have known the nature of the disability and its relation to the employment, the right to compensation therefor shall be barred, except that the right to compensation shall not be barred if the employer knew or should have known, within the two-year period, that the employee had sustained or probably would sustain permanent disability."

The "date of injury" was the last day of work for the Delta Oil Company, December 13, 1948. Sec. 102.01 (2),

■

Stats. 1947. No application for benefits except that filed on July 18, 1950, was filed with the commission within two years from the date of injury. No payment of compensation has been made. As stated in the employer's brief, it appears therefore that ". . . section 102.12, 1947 statutes, bars the present claim for general benefits under chapter 102 unless:

"a. The July, 1950, application for nondisabling silicosis, under section 102.565 tolled the provisions of section 102.12 as to the claim for general benefits, or

"b. The 1953 application was filed within two years of the date that the applicant knew or should have known of the nature of his disability in its relation to the employment, or

"c. Within the two-year period the employer knew or should have known that the employee had sustained or probably would sustain permanent disability."

The application made in 1950 tolled the provisions of sec. 102.12, Stats. 1947. It is probably more nearly accurate to say that by then filing his claim Wilson presented to the commission a demand for all that he might be entitled to, then or in the future, on account of the disease contracted while in the employ of the Delta Oil Company, including that which he sought to receive by the filing of the supplementary application on May 5, 1953. Wilson had but one claim against the Delta Oil Company,—that which arose from the fact that he contracted silicosis while in its employ. He had but one claim for benefits, one which was not severable, but included all that might be awarded him under the provisions of the Workmen's Compensation Act. *State ex rel. Watter v. Industrial Comm.* (1939), 233 Wis. 48, 287 N. W. 692; *Christnovich v. Industrial Comm.* (1950), 257 Wis. 235, 43 N. W. (2d) 21; *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 68 N. W. (2d) 550. The fact that the 1950 application was made when Wilson had not yet become disabled, that it was based upon the presence of the nondisabling silicosis, and that the benefits were not then

awarded is immaterial. If the facts had warranted he might then have been awarded benefits, as appears from the provisions in sec. 102.565 (5) that "any amount which shall have been paid under this section shall be credited against compensation found to be payable by such employer for disability caused by silicosis." What we said in *A. D. Thomson Co. v. Industrial Comm.* (1936), 222 Wis. 445, 268 N. W. 113, 269 N. W. 253, controls and is a complete answer to plaintiff's contention that the statute was not tolled. We said (p. 450):

"It is our opinion that when an application for compensation is timely made, such application tolls the running of the statute of limitations as to all compensation to which the applicant may ultimately be entitled."

We are of the opinion also that Wilson did not know and that there is nothing in the record which requires that it be held that he ought to have known the nature of the disability and its relation to the employment prior to November 15, 1952, the date upon which he sustained his first wage loss and one well within the two-year period preceding his claim for general benefits. It is not enough to start the statute running that an employee know that he has acquired an occupational disease. The word "disability" as used in sec. 102.12, Stats. 1947, means such physical incapacity to work as results in wage loss. *Schaefer & Co. v. Industrial Comm.* (1936), 220 Wis. 289, 265 N. W. 390. In *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 42, 60 N. W. (2d) 409, 61 N. W. (2d) 847, this court said:

"This court has repeatedly held that in the case of occupational disease, such for example as silicosis, there can be no disability within the meaning of the Workmen's Compensation Act without a wage loss, and that it is the wage loss and not the exposure of the employment which constitutes the disability. Typical of such cases are those of *Milwaukee*

*M. & G. I. Works v. Industrial Comm.* (1936), 220 Wis. 244, 263 N. W. 662, 265 N. W. 394; and *Schaefer & Co. v. Industrial Comm.* (1936), 220 Wis. 289, 265 N. W. 390."

We conclude that the claim filed on May 5, 1953, is not barred by the provisions of sec. 102.12, Stats. 1947.

The employer contends that the finding of a 50 per cent temporary partial disability and the award upon that basis for the period commencing March 23, 1953, and ending January 28, 1954, the date of the last hearing, is without support in the record. The amount to which the employee may be entitled for partial disability must be based upon an actual wage loss sustained, for it is provided in sec. 102.43 (2), Stats. 1947, that if an injury causes disability to an employee an indemnity shall be due as follows:

"If the injury causes partial disability, during the partial disability, such proportion of the weekly indemnity rate for total disability as the actual wage loss of the injured employee bears to his average weekly wage at the time of his injury."

The statute means what it says, that for a partial disability "one who has sustained no wage loss cannot recover compensation based on a theoretical loss of wages." *Employers Mut. L. Ins. Co. v. Industrial Comm.* (1939), 230 Wis. 670, 681, 284 N. W. 548.

On March 23, 1953, the beginning of the period we are now considering and after he had been temporarily and totally disabled, Wilson returned to work for the S & M Asphalt Distributing Company. He continued in that employment until sometime in December, 1953. He had not worked up to the date of the last hearing, January 28, 1954, which is the end of the period we are considering. He testified that he quit work in December, 1953, because he "had to go to the doctor and get treatments." The employer contends that upon the basis of these facts the commission could not properly have found Wilson disabled and suffering a wage loss during

the period from March 23 to December 28, 1953, and that, consequently, the award must be limited to compensation for the remainder of the period, to wit: December 28, 1953, to January 28, 1954, five weeks at $14 per week or $70 instead of $623 awarded.

The commission contends that certain medical testimony supports the finding. It refers to the fact that Dr. P. E. Oberbreckling, claimant's attending physician, stated in a letter written on May 27, 1953, that Wilson had "lost much time from work, in fact, he has hardly been able to go outside in the winter months because he just cannot breathe in cold air." Dr. Oberbreckling examined and treated applicant at various times between October, 1948, and March 23, 1953, the date upon which he returned to work and the beginning of the period with which we are presently concerned. Obviously his statement cannot have referred to claimant's condition during that period.

Dr. O. A. Sander examined the claimant at various times between November 15, 1949, and January 25, 1954. His testimony was that when he examined claimant on April 24, 1953, he was "quite short-winded, even with mild physical exertion." It is also relied upon in support of the finding. It cannot possibly be construed as meaning that at that time claimant was disabled and therefore suffering a wage loss.

Against this meager testimony is that of claimant himself that he returned to work on March 23, 1953, and continued thereat until sometime in December of the same year. During that period he earned more per month than he had at any time while employed by the Delta Oil Company. He fixed no definite date in December when he quit work.

The finding is without support. Because of the unsatisfactory state of the record upon the issue we believe that the matter should be remanded to the commission for the purpose of redetermining what, if any, award should be made for the

temporary partial disability suffered during the period March 23, 1953, to January 28, 1954.

*By the Court.*—Judgment modified as directed in the opinion and, as so modified, it is affirmed. The cause is remanded with directions to remand the record to the Industrial Commission for further proceedings for the purpose stated in the opinion.